## Case No. 4,176.

### DUNN v. GAMES et al.

[1 McLean, 321.] [1]

Circuit Court, D. Ohio. July Term, 1838. [2]

Mr. Fox, for plaintiff.
Mr. Brush, for defendants.

OPINION OF THE COURT. This action of ejectment is brought to recover possession of a certain tract of land in the Virginia military district, claimed by the lessor of the plaintiff, and of which the defendants are in possession. To show his title the plaintiff gave in evidence a patent for the land from the United States, to David Buchanan. And then offered in evidence a deed from David Carrick Buchanan to Walter Sterling, dated 22d May, 1825. In this deed the grantor stated that he had been formerly called David Buchanan, and that it was executed in conformity with a decree of the circuit court of the United States for the fifth circuit, in the Virginia district. The deed was executed at Glasgow, in Scotland, and its execution was proved by the two

[1] [Reported by Hon. John McLean, Circuit Justice.]

[2] [Affirmed in 14 Pet. (39 U. S.) 322.]

subscribing witnesses, who swore "that they saw the grantor seal as his own proper act and deed, and in due form of law, acknowledge and deliver this present conveyance." This oath was administered by the lord provost, and chief magistrate of Glasgow, and which he duly certified under his seal of office.

The defendants objected to the admission of this deed: 1. That it does not appear to have been executed by the patentee. 2. That it purports to have been made in pursuance of a decree of court, and the record of that decree is not in evidence. 3. That the acknowledgment of the deed contains no sufficient evidence of its delivery.

The patent issued to David Buchanan, and the deed to Sterling is executed by David Carrick Buchanan. Now it is for the jury to determine whether the grantor and the patentee are the same person. And this they will have a right to determine from the statement on the face of the deed, and other circumstances of the case. In 5 John. 84, and [Strother v. Lucas] 12 Pet. [37 U. S.] 456, it is said, the law knows of but one Christian name; and that the omission of the middle name or the initial letter of it, cannot be material. The party may show that he is known as well by the one name as the other. The deed will, therefore, be admitted as evidence.

The second objection, that the record of the decree is not offered in evidence, cannot be sustained. The recital in the deed that it was executed in pursuance of a decree, &c. was unnecessary to the validity of the instrument. It may be considered surplusage, or as a reason why the deed was executed to Sterling. The fee was vested in Buchanan, and, of course, he had a right to make the conveyance.

The other objection, is not to the execution of the deed, but that the acknowledgment contains no evidence of its delivery. It is not necessary that the delivery should be proved in the acknowledgment. The fact of delivery may be shown expressly, or it may be proved by circumstances. Generally the possession of the deed by the grantee, is sufficient evidence of its having been delivered. At least, this is prima facie evidence. On this ground, therefore, the deed to Sterling cannot be excluded from the jury. Sugd. Vend. 418; Verplanck v. Starry, 12 Johns. 536; Goodrich v. Walker, 1 Johns. Cas. 250; Hatch v. Hatch, 9 Mass. 307; Ruggles v. Lawson, 13 Johns. 285; 1 Johns. Ch. 240. A deed was then offered in evidence from Sterling to the lessor of the plaintiff, to which the same objection, as to the want of proof of delivery in the acknowledgment was made, and it also, was overruled.

This closed the evidence of the plaintiff; and the defendants then offered in evidence a certified copy of a paper purporting to be a deed from the auditor of Brown county, to John S. Wills, dated the 22d April, 1824,

for two hundred acres of land in the tract claimed by the plaintiff, which the court overruled on the ground that the deed purported to have been given on a tax sale, and there was no proof that the requisites of the law, in such cases, had been complied with. The defendants then offered the same deed, accompanied by the following duly certified copy of the record of the proceedings at and before the sale of the land for taxes, dated 9th May, 1828, certified by Hezekiah Lindsey, county auditor of Brown, within which the land was situated. "Be it remembered that the following lands, as herein set forth, advertised for sale in the names of the persons to each tract annexed, were regularly entered on the duplicates for taxation, by the auditor of Brown county, for the year 1821; the tax whereon not being paid for said year, the collector of said county returned the same as delinquent therefor; whereupon the said county auditor made out and transmitted to the auditor of state, a list of said lands, with the amount of taxes, penalty, and interest charged thereon, which was transmitted by the auditor of state to the county auditor of said county; whereupon a copy thereof was published three weeks in succession in a newspaper printed in Georgetown, Brown county, Ohio, in general circulation in said county; and afterwards the county auditor, in making out the duplicate for said county the succeeding year, to wit, for the year 1822, charged each tract, in addition to the tax for said year 1822, with the tax, interest, and penalty of the preceding, and sent the same out a second time for collection; the tax on said land not being paid for the year 1822, they were a second time returned delinquent for the non-payment of the tax, penalty, and interest charged thereon; a list of which was again transmitted to the auditor of the state; that afterwards the said auditor of state did transmit," &c. This, together with the advertisement published six weeks before the sale of the land, is the only evidence produced to show the proceedings in regard to the sale. Although the above, in the caption, is stated to be a certified copy of the record of the proceedings at and before the sale of the land, yet it is manifestly a history of the proceedings after the events had transpired, and not a copy from a record where they were entered as they occurred.

By the act of the 8th of February, 1820, and an amendment thereto, of the 2d of February, 1821, the county auditor is required to make out from the books or lists in his office, every year, a complete duplicate of all the lands listed in his office subject to taxation with the taxes charged thereon. In this duplicate he is required to state the number of entry, for whom originally entered, the quantity of land contained in the original entry, the county, water-course, number of acres, whether first, second or third rate

land, and the amount of taxes charged thereon. The matters of description are to be entered in separate columns opposite the names of the proprietors. And the auditor is required to keep a book for that purpose, and to record, in the form above specified, the lands entered in his county for taxation. If the tax be not paid in the county by the 20th November, or to the state treasurer by the 31st December, in each year, the lands are to remain charged with all arrearages of taxes and lawful interest thereon, until the same shall be paid; to which there shall be added a penalty of twenty-five per cent. on the amount of tax charged for each year the same may have been delinquent. The auditor of state is required to compare the list of defalcations transmitted from each county auditor, with the duplicates sent to his office from said county, for the same year; and to record in a book kept for that purpose, the delinquent lands, and charge the same with penalties and interest. When lands are returned delinquent for two years, the penalty and interest are to be charged for each year by the state auditor, who is required to transmit the same to the county auditor; and he is forbidden to enter lands, a second time delinquent on the duplicate for the current year. On receiving this list of lands a second time, the county auditor is required to advertise the same six weeks successively, in a newspaper printed in the county; which advertisement shall state the amount of the tax, interest and penalties due on each tract, and the time of sale, &c. All sales are to be made by the county auditor; and on such sale being made, he is required "to make a fair entry descriptive thereof, in a book to be provided by him for that purpose," and shall "record in said book all the proceedings relative to the advertising, selling and conveying said delinquent lands; which record shall be good evidence in all courts holden within this state."

Now the question is whether the paper certified to be a true record from the books of the county auditor, shows a substantial compliance with the requisites of the law. It states the fact that the land was "regularly entered on the duplicates for taxation, by the auditor of Brown county, for the year 1821," but how was it entered? This is the first step, and if the land be not entered in conformity to law, the subsequent proceedings in regard to the sale are invalid. The law requires the "name of the proprietor to be stated, the number of survey, for whom originally entered, the quantity of land contained in the original entry, the county, water course, number of acres, whether first, second, or third rate, and the amount of taxes charged thereon." And subsequently, if the land be returned delinquent, interest and a certain penalty are to be charged. Now is it enough for the auditor to say that these things were legally done? Must he not show how they were

done, that the court may judge of their legality? The record, if it may be called a record, substitutes the judgment of the auditor for the judgment of the court. On receiving the delinquent list from the auditor of state, charged with the penalty and interest, the county auditor is required by the law to publish the same three weeks in some newspaper of general circulation in his county. This the county auditor states was done. But how was it done? Should not the record show that an exact copy of the duplicate received from the auditor of state, as the law requires, was published? Is the mere statement by the auditor, that the thing was done, sufficient? Why is it not then sufficient for the clerk of this court to state in the record the fact, that a judgment was entered, omitting the form in which it should be entered? It is not the opinion of the county auditor that the thing was legally done, which is made evidence by the statute, but the transaction itself. It would scarcely be contended, if the auditor, instead of stating at length the advertisement on which the land was sold, showing the time and manner of it were conformable to law, had simply declared the fact that legal notice had been given, that it would have been sufficient. And yet, if the mere statement of the fact, that the land was regularly listed for taxation, the three weeks notice given on receiving the delinquent list from the auditor, and that the penalties and interest were regularly charged, be received as evidence, on the same principle, the same kind of evidence should be received as to the notice and sale. The record of the auditor, if kept as the law requires, must show the entry of the land and all the other material facts in the case, and a certified copy from this record is made evidence by the statute. It must be a copy from the book, and not a historical account of what was done. We think the paper offered as a record cannot be so considered. That instead of being copied from the record, it has evidently been drawn from an inspection of it, giving, perhaps, a short account of what appears upon its face.

By the act of 1824, the deed in pursuance of a tax sale is made prima facie evidence of title. This throws, in some degree at least, the burden of proof to invalidate the sale, on the person who contests the tax title. But the present deed does not come under this law, and of course cannot be governed by it. In [Hughey v. Horrel] 2 Ohio, 233, the court say "the requisitions of the law are substantial and useful, and cannot be dispensed with. Tax sales are attended with greater sacrifices to the owners of land than any others. Purchasers at those sales seem to have but little conscience. They calculate on obtaining acres for cents, and it stands them in hand to see that the proceedings have been strictly regular."

And in the case of Holt's Heirs v. Hemphill's Heirs, 3 Ohio, 232, the court decided that a deed from a collector of taxes is not available to transfer the title, without proof that the land was listed, taxed and advertised, &c. In the supreme court of the United States, it has been held in several cases that a person who claims under a tax title must show, to make his title good, that all the requisites of the law had been complied with. McClung v. Ross, 6 Wheat. [19 U. S.] 116; Thatcher v. Powell, Id. 119; Runkendorf v. Taylor's Lessee, 4 Pet. [29 U. S.] 549. And this is the settled rule in this state.

The defendants also gave in evidence a duly authenticated transcript of the record, of the proceedings and decree, of the supreme court of Ohio in the case of White's Heirs v. Buchanan, deceased, in his life time, defendant; and his unknown heirs, after his death, made defendants by bill of revivor, wherein the title of the premises in question, and other lands, were decreed to complainant. On this last evidence the court are asked to instruct the jury, by the defendants, that the pendency of this suit against Buchanan and his heirs was constructive notice to Sterling. This the court refused to do and instructed the jury, that unless the process in the chancery suit had been served, or publication made, before the deed was executed from Buchanan to Sterling, the latter could in no respect be chargeable with notice.

The court were also requested to charge the jury by the defendants, that as the lessor of the plaintiff had introduced no evidence to show his beginning corner, or the other calls in his deed, he could not recover. But the court instructed the jury that in entering into the consent rule, under a special rule of the court, the defendants are bound to admit on the trial, that they are in possession of land claimed by the plaintiff. That in this case there could be no mistake as to the extent of this admission, as the boundaries of the plaintiff's patent are set out in the declaration. And as to the fact of the patentee, being the same person that made the deed to Sterling, the jury were instructed that they might ascertain it, from the recital in the deed, and the other facts and circumstances of the case. And the court stated to the jury their opinion that David Buchanan the patentee, and David Carrick Buchanan the grantor to Sterling were not two persons, but one. But they were informed this opinion was not given to them as matter of law, but in reference to a matter of fact, the truth of which they must determine.

The jury found the defendants guilty, on which verdict a judgment was rendered.

This case was taken to the supreme court by a writ of error, and the decision of the

circuit court on all the points was affirmed. [Games v. Stiles] 14 Pet. [39 U. S.] 322.