Haughwout and Pomeroy v. Murphy.

HAUGHWOUT and POMEROY, appellants, and MURPHY, respondent.

1. Bill filed and subpœna served are necessary before a *lis pendens* becomes constructive notice to persons who shall acquire title from the parties to the suit, *pendente lite.*

2. The commencement of a suit in chancery is constructive notice, only as against persons acquiring title or an interest in the property in litigation after the suit is commenced. A person whose interest existed at the commencement of the suit, will not be bound by the proceedings unless he be made a party to the suit.

3. In equity, upon an agreement for the sale of lands, the vendee, after the contract, is regarded as the equitable owner, and if the vendor thereafter sells the lands, he is considered as selling it for the benefit of the first purchaser, and liable to account to him for the profits of the second sale; or if the second purchaser is a purchaser with notice of the previous contract, he may be compelled to convey to the first purchaser.

4. The defence of a bona fide purchase may be made by plea, in bar of discovery and relief, or by answer, in bar of relief only. Proof of the actual payment of the whole purchase money is essential to that defence, whether it be made by plea or answer. If the defendant has been paid part only, he will be protected *pro tanto* only.

5. Where the subsequent purchaser has accepted a conveyance, and paid part of the purchase money in good faith before notice of a prior contract, if the first purchaser wishes to enforce his right to a conveyance of the lands, he must seek his remedy promptly. He may lose his right to specific relief by a conveyance of the land, by laches, and be remitted to the unpaid purchase money as the only relief that will be equitable. By accepting an assignment of a security taken for such unpaid purchase money, he will be held to have affirmed the sale.

One Amidee Boisaubin, on the 24th day of September, 1863, entered into a contract in writing, with Haughwout, one of the complainants, to sell to him a tract of land situate in the county of Morris, called the Spencer woods, containing twenty-two acres, for $200 per acre, and giving to Haughwout until the 1st day of March, 1864, to accept the proposition. In the latter part of February, 1864, Haughwout gave Boisaubin notice of his acceptance of the proposition. Boisaubin having refused to make conveyance of the prop-

| | |
|---|---|
| 22 | 531 |
| 49 | 154 |
| 22 | 531 |
| 51 | 428 |
| 22 | 531 |
| 52 | 790 |
| 53 | 553 |
| 22 | 531 |
| 55 | 429 |
| 55 | 756 |
| 22 | 531 |
| 57 | 65 |
| 57 | 67 |
| 22 | 531 |
| 59 | 429 |
| 22 | 531 |
| 61 | 631 |
| 61 | 634 |
| 22 | 531 |
| 63 | 129 |

erty, Haughwout, on the 31st of August, 1865, filed a bill against Boisaubin to obtain specific performance of the contract, and on the 1st day of September, 1865, filed in the clerk's office of the county of Morris a notice of the pendency of the said suit, in compliance with the statute.

To the bill filed in that case Boisaubin filed his answer, and the cause coming on for hearing in the Court of Chancery on the pleadings and proofs, a decree was made on the 27th of March, 1867, in favor of Haughwout, that Boisaubin make conveyance to the complainant according to the terms of the said contract. *Haughwout* v. *Boisaubin*, 3 *C. E. Green* 315.

On the 10th day of August, 1867, Boisaubin, in fulfillment of the said decree, conveyed to Haughwout the entire tract called Spencer woods; and on the 14th of October, 1867, Haughwout conveyed the equal undivided one-half part of said tract to Pomeroy, the other complainant.

On the 7th of August, 1865, Boisaubin conveyed to Murphy, the defendant in this suit, three lots, which were parts of the Spencer woods, by a deed bearing date on that day, which was executed on the 7th or 8th of August, but not recorded until the 5th day of October, 1865. The consideration of the conveyance from Boisaubin to Murphy was $600, of which $400 were paid on the delivery of the deed, and the balance of $200 secured by a mortgage payable on the 7th of August, 1866; which mortgage was acknowledged on the 19th of August, 1865, and recorded on the 15th of May, 1866.

The opinion of the Chancellor is reported in 6 *C. E. Green* 119.

*Mr. Pitney*, (with whom was *Mr. C. Parker*) for appellants.

Haughwout's title to the premises in question became perfect in equity on or about March 1st, 1864, when the option to purchase the Spencer woods was accepted by him, and the offer made to complete the contract. From that time,

Boisaubin became a mere trustee of the legal estate for Haughwout, and the latter a trustee of the purchase money for the former.

Whoever took the legal estate from Boisaubin after that date, took it burthened with this trust, unless he took it under such circumstances as to entitle him to the position of a bona fide purchaser for value paid, before notice of the trust.

Complainants contend that defendant does not occupy such position, and ask a declaration to that effect. They do not ask for specific performance of the contract between Haughwout and Boisaubin; that has already been performed, and a conveyance made and executed by Boisaubin to complainants, including the premises claimed by defendant.

Complainants' chain of legal title is complete. What they ask is, that the court shall decree and declare that such title is paramount to defendant's as to the lots in question in this suit.

Complainants do not claim or ask for any part of the purchase money paid by Murphy to Boisaubin. Such claim is not within the scope of their bill. They disaffirm the sale from Boisaubin to Murphy, and claim the land itself.

Haughwout established his equitable title against Boisaubin after a fierce litigation. The only question in this cause is whether or not Murphy is entitled to the position of a bona fide purchaser for value paid, before notice of Haughwout's equitable title.

Constructive notice in pais is sufficient; that is, notice of such facts and circumstances as would excite the suspicions of a prudent man and put him on inquiry. We allege and prove distinct and direct notice, from three sources.

The notice from his counsel was quite sufficient. The doctrine that notice must come from the party claiming title is exploded. 2 W. & T. Lead. Cas. in Eq. (ed. of 1859) 157–60; Curtis v. Mundy, 3 Metc. 405; Ripple v. Ripple, 1 Rawle 386; Jackson v. Caldwell, 1 Cow. 641–2; William-

son v. Brown, 15 N. Y. 354; Green v. Slayter, 4 Johns. Ch. 46.

The whole conduct of the man, and his evidence in both causes, prove that at the time he called on his counsel, the purchase of the lots was still in fieri, the transaction unfinished, his money under his control if not in his actual possession, and he debating whether to complete the purchase or not.

The notice of lis pendens was filed before Murphy repaid the $400 to Boisaubin.

Murphy is estopped from setting up in this cause, that he was mistaken in his testimony in the other cause. In order to adjust the equities between Haughwout and Boisaubin, arising out of the peculiar circumstances of the case, it became necessary to inquire what portions of the land had been sold by Boisaubin to bona fide purchasers, without notice of Haughwout's equitable rights; such portions were to be excepted from Boisaubin's conveyance to Haughwout, and Boisaubin was to account to Haughwout for the price of the lots so sold.

The bill in this cause distinctly alleges that a subpœna to answer was issued and served in the specific performance suit. This allegation is not denied by the answer, nor are the complainants asked to prove it. It therefore stands admitted.

Under the present practice of answering without oath, the element of discovery is eliminated from the answer, and its office is simply to make an issue to ascertain which of the allegations of the bill are to be disputed, to be put in issue. And such as are not so put in issue, are admitted for the purposes of the suit.

It is proved that an injunction was issued immediately after the bill was filed, and served on Boisaubin. The record shows that he answered within the time required by law, and that the cause was proceeded in with diligence, and brought to a hearing. Under such circumstances, and a notice of

*lis pendens* having been duly filed in the clerk's office, the issuing of a subpœna is an idle ceremony, and not necessary to make the recorded notice effectual.

The mere filing the bill with the clerk and taking no steps thereon, might be nugatory; but any means which result in bringing the defendant into court, and in the active prosecution of the suit, are sufficient.

The Chancellor's ruling is contrary to the letter and spirit of the statute (*Nix. Dig., p.* 112, § 57,) and the understanding of the profession.

The prompt filing of the answer and diligent prosecution of the suit, raised a presumption that the subpœna was issued and served; especially as it was distinctly alleged in the bill, and not denied by the answer.

The true measure of protection to a bona fide purchaser for value paid, before notice, is *indemnity*. *Campbell* v. *Nichols*, 4 *Vroom* 87–8; *Holcomb* v. *Wyckoff, Feb. T.*, 1870, *Sup. Ct.*, not yet reported.

Having innocently dealt with a person clothed with apparent title, he is entitled to be made whole, *and no more*, by the real owner, before being dispossessed.

Murphy purchased from Haughwout's trustee, and took the property burthened with the trust. If he paid any money before he had notice of the trust, he will be protected to that extent. Whatever he paid before notice, he is entitled to have returned to him. The controversy is not as to whether complainants are entitled to any money from defendant, but whether defendant is entitled to any money from complainants as a condition to the relief prayed for. If he paid $400 in good faith before he had notice of complainants' equity, he is entitled to have it returned by complainants.

Complainants do not affirm the deed from Boisaubin to Murphy, and claim the purchase money as unpaid; but they disaffirm it, and pray that it may be set aside, and the title under it be declared subsequent to theirs.

The decree in *Flagg* v. *Mann*, 2 *Sumner* 566, referred to by the Chancellor in his opinion, was the result of the peculiar circumstances of that case, and of the prayer of the bill, which prayed for unpaid purchase money.

On the other hand, Judge Story says: "So the purchaser must have paid his purchase money before notice, for otherwise he will not be protected; and if he have paid a part only, he will be protected *pro tanto* only." *Eq. Jur.,* § 64 *c.*

And in *Wormley* v. *Wormley*, 8 *Wheaton* 421, 449, 450, he says: "It is a settled rule in equity, that a purchaser without notice, to be entitled to protection, must not only be so at the contract or conveyance, but at the payment of the purchase money. The answer of Castleman and McCormick does not allege any such want of notice. On the contrary, it is in proof that upwards of $3000 of the purchase money was paid in the autumn of 1813 and spring of 1814, not only after full notice of the anterior transactions, but after the commencement of the present suit. It appears, therefore, * * * that Castleman and McCormick were not purchasers without notice of the material facts constituting the breach of trust, *and that the Frederic lands ought, in their hands, to stand charged with the trusts in the marriage settlement.*" And such was the decree.

In *Jones* v. *Powles*, 3 *Myl. & K.* 581, 599, the defendants claimed title under a person in possession of an equity of redemption as devisee under a forged will, and were protected by a conveyance of the legal estate from a mortgagee of the original owner and alleged testator. The Master of the Rolls decreed the estate to the complainants, the heirs-at-law, upon payment to defendants of the sums (a part only of the purchase money) actually paid by them to the pretended devisee before notice of the forgery.

"It is essential to entitle the vendee to protection in England, that the purchase should have been brought to a conclusion by the payment of the whole of the purchase money, on the one part, and the execution of the conveyance, on the other; and relief will be denied if notice be given while the

transaction is incomplete in either particular." *Basset* v. *Nosworthy,* 2 *W. & T., Lead. Cas. in Eq. (ed.* 1859), *p.* 101.

"In *Flagg* v. *Mann,* 2 *Sumner* 486, the court would seem to have entertained the opinion that *part* payment of the purchase money entitled the purchaser to the land itself, subject to a lien for the part unpaid, in favor of the holder of the antecedent equity which the purchaser had defeated. But it is plain, that as equity will afford a purchaser protection as against a vendor who has sold in fraud or in contempt of the trust, by enjoining the collection or compelling the surrender of a bond given or obtained for purchase money, *the right to relief"* (on the part of the subsequent purchaser) *"against the cestui que trust"* (the holder of the prior equity), *"must, in general, be limited to compensation and reimbursement for the amount actually expended on the land, or paid for it before notice."* See 2 *W. & T., Lead. Cas. in Eq. (ed.* 1859), *p.* 117.

Lord St. Leonards, in 2 *Vend. & Pur., ch.* 22, § 2, ¶ 16, says: "Notice, before actual payment of all the money, although it be secured and the conveyance actually executed, or before the execution of the conveyance, notwithstanding that the money be paid, is equivalent to notice before contract."

Chancellor Williamson, also, went on the principle of *indemnity* only to the subsequent purchaser, in *Campbell* v. *Campbell,* 3 *Stockt.* 277.

The plea in equity of bona fide purchaser for value was generally used as a protection against discovery, in aid of a claim of title absolute, and possession under it; and the fact that a portion of the purchase money remaining unpaid made the plea vicious, shows that a defendant under such circumstances could not escape and retain the land by simply paying over the amount remaining unpaid.

The rule adopted by the Chancellor gives the subsequent purchaser who has paid ever so little of his purchase money before notice of the claim of the prior purchaser, more than indemnity, viz., the benefit of his bargain; which is the

very equity belonging to the prior purchaser, and which, in a case like this, he seeks by his suit in equity.

Where the dispute is simply which party is entitled to the profit of his bargain, the oldest equity, other things being equal, must prevail.

The principle upon which the Court decided Campbell *v.* Nichols, and Holcomb *v.* Wyckoff, also intervenes against the purchaser having the benefit of his bargain.

It is no relief in favor of a holder of a prior contract of purchase, and against a subsequent purchaser, to merely order the latter to pay the unpaid purchase money to the former.

Suppose A on the 1st day of April, contracts to convey to B on the 1st day of May, a tract of land at the price of $10,000, to be paid on the delivery of the deed; and suppose on the 25th of April A conveys the land to C (who has no notice of B's contract), and receives cash $1000, and bond and mortgage $9000; and then, on May 1st, B tenders the money to A and demands conveyance, and at once files a bill in equity against A and C, praying that C may convey to him on payment of the $1000 paid by C before notice; in the mean time the land turns out to be worth $25,000; what sort of relief would it be to say to B, "C must keep the land and pay you the $9000 of purchase money remaining unpaid?"

Of course B must at once hand the $9000 over to A as purchase money, or rather he is not entitled to it at all; and so he would take nothing by his bill, and lose the profit and benefit of his bargain, which he was clearly entitled to as against C, by reason of his equity being older than C's, and which was the only thing in dispute between the parties. 2 *W. & T. L. C.* * 34, 35, *note to Le Neve v. Le Neve.*

The English rule, strictly carried out, refused *any* relief to a bona fide purchaser, unless he had paid *all* his purchase money; but, in this country, he was relieved to the extent of reimbursement of what he had paid in good faith before notice. 2 *W. & T. L. C. p.* 116; *Youst v. Martin,* 3 *S. & R.* 423; *Bellas* v. *McCarthy,* 10 *Watts* 13.

*Beck* v. *Uhrich*, 1 *Harris* 636, was an issue to test the validity of a judgment for $1500, recovered upon bonds given in part payment of purchase money of land which the vendor held in trust for himself and others as tenants in common. $250 in cash had been paid before notice of the trust. The defence to the judgment was, that the judgment debtor had been notified of the trust before payment of the judgment. The court held this a good defence, and set aside the judgment; and said: " It is true that Beck paid $250 to Uhrich, who was the *apparent* legal owner; and if he purchased without notice of the trust, he would have an interest in the land to *that extent*, for which he is *probably more than compensated by the rents and profits.*" And again: " So far as an innocent purchaser is concerned, *he is protected so far as he has paid his money.*"

*Kunkle* v. *Wolfersberger*, 6 *Watts* 129; *Beck* v. *Uhrich*, 1 *Harris* 640; *Patterson* v. *Brown*, 32 *N. Y. R.* 93; *Wells* v. *Morrow*, 38 *Ala.* 130; *Willard's Eq. Jur.* 298; *Dow* v. *Jewell*, 18 *N. H.* 343, 358; *Pickett* v. *Barron*, 29 *Barb.* 508; 3 *Barb. Ch.* 451; *Warner* v. *Whittaker*, 6 *Mich.* 135; *Brown* v. *Welch*, 18 *Ill.* 343.

After the $400 had been handed back by Boisaubin to Murphy, and while the latter retained it in his possession, he stood as if no money had been paid. The Chancellor's view of the transaction is erroneous. The money was handed back as *purchase money*; it was the exact amount and identical money paid, and the object was to put Murphy in *statu quo*.

If he had refused to pay the second time, Boisaubin must have sued him for *purchase money*, and Murphy could have defended on the ground that there was a prior claim to the property, of which he had notice. 2 *W. & T. L. C.*, * 54 & 55, (ed. 1859,) *p.* 152, and authorities cited; *Jones* v. *Stanly*, 2 *Eq. Cas. Ab.* 685; *Wigg* v. *Wigg*, 1 *Atk.* 384; *Tourville* v. *Naish*, 3 *P. Wms.* 307.

Murphy having advised with Judge Dalrimple, and talked with Mr. Little, and heard Boisaubin's story, decided delib-

erately, to pay the money and *keep the property:* "*I have bought it, I said, and I will keep it.*"

The whole case shows that he was willing to take the chances; and having so decided, he put his deed on record, and told Boisaubin to come for his money.

Having had actual and constructive notice of Haughwout's claim and the suit brought thereon, before he paid his money, and while there was ample *locus penitentiæ,* he must be held bound by the result.

If he thought he could make a better defence than Boisaubin, it was his right and duty to make himself a defendant to this suit, and not doing so, he is barred. *Finch* v. *Newnham,* 2 *Vern.* 216; *Landon* v. *Morris,* 5 *Sim.* 247; *Metcalfe* v. *Pulvertoft,* 2 *V. & B.* 206, 207; 2 *Story's Eq. Jur.,* § 908, and note.

Haughwout had no notice of the deed to Murphy until after bill filed. The deed was not recorded, and no possession was taken under it until long afterwards, April, 1866; and Haughwout was not obliged to file a supplemental bill to bring Murphy in.

It is the settled rule of the court, that no notice need be taken by the complainants of parties coming in *pendente lite* under the defendant.

The position of the defendant is not strengthened by the payment of the $200 mortgage. It was assigned to Davidson as collateral to Boisaubin's bond and mortgage, and the payment enured to Boisaubin's benefit only. His bonded debt was reduced so much thereby, and as a consequence, the decree for deficiency against him was reduced. The payment was purely voluntary.

Haughwout repaid to Davidson the whole sum, $5800, with interest, advanced by him to Geoffrey.

The $212 received by Davidson's solicitor from Murphy, was paid to Davidson individually; did not go into the cash of the partnership, and was entirely forgotten by Davidson until the check was shown him.

The evidence shows that Mr. Davidson made the $212 as a profit on the transaction, as he had a perfect right to do.

The rules which govern suits for specific performance in England, and require any prompt action on part of the complainant, have no application to this case.

*Mr. Vanatta,* for respondent.

I. The appellants failed to show that Murphy, before he paid his purchase money, had notice of their alleged equitable title.

The appellants base their claim on an alleged prior contract between Amidee Boisaubin and Haughwout, dated in September, 1863, (nearly five years before the bill was filed,) of which, as they say, Murphy had notice before he paid anything, and before he received any deed. This alleged notice is the foundation of their suit, and without it they have no case at all. The *onus probandi* is on them, and they must make it out clearly.

The answer fully denies the notice.

The warning given to Murphy by his counsel, of the contract between Boisaubin and Haughwout, was after Murphy had received his deed and paid $400 of the purchase money. Moreover, all that was said to him was not enough to constitute notice. It was not sufficient to put him upon inquiry.

The sufficiency of the notice must always be judged of upon reasonable consideration of all the surrounding circumstances. 1 *Story's Eq. Jur.*, § 400 *a*. What is sufficient to set a lawyer, or an educated, intelligent business man upon inquiry, may not amount to a hint to an ignorant, inexperienced laborer. What counsel said to Murphy was calculated to allay fears and suspicions—to divert from, instead of leading to, further inquiry.

Murphy applied to his counsel for advice in their professional characters, because they were counselors-at-law, and because he wanted the advice of such counselors. For this reason, the evidence of both those gentlemen, as to notice to

Murphy, is illegal, and should be excluded from consideration. 2 *Sug. on Ven. & Pur.*, ch. 17, p. 298; 1 *Greenl. Ev.*, § 241.

Not only is the fact of notice not proved, but it is negatived.

Boisaubin handed back to Murphy, on the 19th or 20th of August, 1865, the $400, not to rescind the sale, but as a special pledge for a special purpose, and as soon as the Brittin mortgage was canceled, Murphy's right to hold the money ceased.

II. Haughwout (before he conveyed a portion of the premises to Pomeroy) ratified Murphy's purchase and his deed, and waived all exceptions thereto.

The mortgage which Murphy gave Boisaubin for $200, included the three lots in question, and on its face declared it was to secure part of the purchase money for those lots. In Murphy's evidence in Haughwout's suit, given 5th of April, 1866, he told fully what that mortgage was for. That mortgage was assigned to Davidson, (Haughwout's partner.) It was paid to Haughwout's solicitor. In substance and in fact, Haughwout was the owner of the $200 mortgage, and received the money on it.

The money Davidson paid Geoffrey for the mortgages was really a loan to Haughwout. It was money paid for his use, and at his request, and on his guarantee; and when he paid Davidson he was entitled to all the mortgages. Haughwout and Davidson so understood and so treated it.

That the $200 mortgage was assigned as collateral, is immaterial. The point is that Haughwout, or his agents, took the money from Murphy, knowing that he paid it as the balance of the purchase money for the land in question. It does not appear that Haughwout did not keep Murphy's $200. There is no pretence that he paid it to Geoffrey or Boisaubin.

After taking the pay for the land, he cannot now take back the land and keep it also. He cannot have the purchase money and the land, both.

If the landlord evicts his tenant, he cannot thereafter collect rent. And if the tenant holds over, and, while holding over, the landlord receives rent for the future, he cannot then evict the tenant. He cannot enjoy the land and the rent too. When he accepts the one he relinquishes the other.

If Murphy had notice of the alleged equity of the appellants before he paid the $400, the receipt of the money for the mortgage was a ratification of Murphy's purchase, and a waiver of all objections to it. *Scott* v. *Gamble*, 1 *Stockt.* 218; *Van Doren* v. *Robinson*, 1 *C. E. Green* 262; *Chesterfield* v. *Janssen*, 1 *Atk.* 301; *Beresford* v. *Archbishop of Armagh*, 13 *Sim.* 643; *Butler* v. *Haskell*, 4 *Dess.* 709; *Campbell* v. *Fleming*, 1 *Adol. & Ellis* 40.

III. The appellants, by reason of acquiescence and laches, have no right to specific performance.

See *Van Doren* v. *Robinson*, 1 *C. E. Green* 262; *Dorin* v. *Harvey*, 15 *Sim.* 49.

The case now before the court, like *Van Doren* v. *Robinson*, is an unilateral contract. In all such cases laches are fatal. *Fry on Spec. Perf.*, § 733; *Watson* v. *Reed*, 1 *Tamlyn* 381.

In short, whenever the acts or omissions of the plaintiff have been such that specific performance will be inequitable, the court will refuse it.

The opinion of the court was delivered by

DEPUE, J.

The bill of complaint filed in this cause, after setting out the proceedings in the suit in chancery between Haughwout and Boisaubin, charges that the deed of conveyance from Boisaubin to Murphy, though bearing date on the 7th of August, 1865, was not actually delivered until the 5th day of October of that year, and after the filing of the bill of complaint by Haughwout against Boisaubin, and after the filing of notice of the pendency of that suit in the clerk's office of the county of Morris. It further charges that the

said Murphy had actual knowledge of the contract of purchase made by Haughwout with Boisaubin, and of the intention of Haughwout to commence a suit for specific performance, long before the delivery of his deed and the payment of any part of the consideration money therefor; and that the defendant accepted the said conveyance, and paid the purchase money therefor, with actual knowledge of the existence of the complainants' contract, and of the pendency of the suit for the specific performance thereof.

The prayer of the bill is, that the title of the complainants to the said three lots may be ratified and established, and declared to be good and valid as against the claim of title made to the same by said Murphy, and be declared paramount thereto; and that the claim of title to the said lots by the said Murphy, under his deed of conveyance from Boisaubin, be declared invalid and of no effect against the title of the complainants, and that the defendant may be directed to release and convey to the complainants; and that the complainants may have such other and further relief, &c.

A suit in chancery, duly prosecuted in good faith, and followed by a decree, is constructive notice to every person, who acquires from a defendant, *pendente lite*, an interest in the subject matter of the litigation, of the legal and equitable rights of the complainant as charged in the bill and established by the decree.

This effect of a successful litigation in subordinating the title of a purchaser pending a litigation, to the rights of the complainant as established in the suit, is not derived from legislation. It is a doctrine of courts of equity, of ancient origin, and rests not upon the principles of the court with regard to notice, but on the ground that it is necessary to the administration of justice that the decision of the court in a suit should be binding not only on the litigant parties, but also upon those who acquire title from them during the pendency of the suit. *Bellamy* v. *Sabine*, 1 *DeG. & J.* 566; *Metcalfe* v. *Pulvertoft*, 2 *V. & B.* 205; *Walden* v. *Bodley's Heirs*, 9 *How.* (*U. S.*) 49; *Murray* v. *Lylburn*, 2 *Johns.*

*Ch.* 441. Such a purchaser need not be made a party, and will be bound by the decree which shall be made. 1 *Story's Eq.*, § 406; *Story's Eq. Pl.*, §§ 106, 351; *Bishop of Winchester* v. *Payne*, 11 *Ves.* 196.

Before any statutory provision was made requiring notice of the pendency of the suit to be filed in order to charge a subsequent purchaser from the defendant with notice of the litigation, it became the established practice that subpœna served and bill filed were necessary before the suit was considered as commenced, so as to make its pendency constructive notice to persons deriving title from the parties, and to give the decree a conclusive effect against such persons. 1 *Vern.* 318; 2 *Maddock's Ch. Prac.* 325; 2 *Sug. V. & P.*; *Hill on Trustees* *511; *Hayden* v. *Bucklin*, 9 *Paige* 512; *Dunn's Lessee* v. *Games*, 1 *McLean* 321; *S. C.*, 14 *Peters* 322, 333. An assignee who takes an assignment from the defendant after bill filed, but before subpœna served, is a necessary party. *Powell* v. *Wright*, 7 *Beav.* 444. By the fifty-seventh section of the Chancery Practice Act, (the provisions of which are similar to the New York act of 1834, and to the English statute of 3 & 4 *Vic.*, *ch.* 11, *sec.* 7,) another requisite is superadded in order that the proceedings in the suit shall effect a bona fide purchaser or mortgagee : a written notice of the pendency of the suit must be filed in the clerk's office of the county in which the lands to be affected lie. *Nix. Dig.* 112. This section is expressed in negative terms, and has not changed the former practice except in prescribing that notice of the *lis pendens* shall be filed before a bona fide purchaser or mortgagee shall be chargeable with notice of the pendency of the suit, notwithstanding the bill has been filed and the subpœna served.

But the defendant was not a purchaser *pendente lite.* He acquired title by a deed which bears date on the 7th day of August, 1865, and was acknowledged on the next day. The defendant testifies that it was delivered on the 7th of August. Boisaubin's testimony is that it was delivered on the 7th or 8th. From the date of the acknowledgment of the mort-

gage, it is probable that it was not finally delivered before the 19th. The proof, however, is full and clear that it was executed and delivered to Murphy before the bill was filed in the case of Haughwout *v.* Boisaubin. The commencement of a suit in chancery is constructive notice of the pendency of such suit only as against persons who have acquired some title to or interest in the property involved in the litigation, under the defendant, after the suit is commenced. *Stuyvesant* v. *Hall,* 2 *Barb. Ch.* 151; *Hopkins* v. *McLaren,* 4 *Cow.* 667; *Parks* v. *Jackson,* 11 *Wend.* 442. A person whose interest existed at the commencement of the suit is a necessary party, and will not be bound by the proceedings unless he be made a party to the suit. *Ensworth* v. *Lambert,* 4 *Johns. Ch.* 605.

The complainants' right to relief on the ground that the defendant was a purchaser from Boisaubin *pendente lite* having failed, it must be considered whether, in the other aspect of the case, he will be entitled to relief. In this aspect the bill is to be taken to have been filed for the execution of the trust arising from the prior contract between Haughwout and Boisaubin for the purchase of the lands, by the conveyance to the complainant, by Murphy, of the legal title which he acquired by his deed. In this aspect of the case, the bill is a bill for specific performance.

In equity, upon an agreement for the sale of lands, the contract is regarded, for most purposes, as if specifically executed. The purchaser becomes the equitable owner of the lands, and the vendor of the purchase money. After the contract, the vendor is the trustee of the legal estate for the vendee. *Crawford* v. *Bertholf, Saxton* 460; *Hoagland* v. *Latourette,* 1 *Green's Ch.* 254; *Huffman* v. *Hummer,* 2 *C. E. Green* 264; *King* v. *Ruckman,* 6 *C. E. Green* 599. Before the contract is executed by conveyance, the lands are devisable by the vendee, and descendible to his heirs as real estate; and the personal representatives of the vendor are entitled to the purchase money. 1 *Story's Eq.,* § 789; 2 *Ibid.,* § 1213. If the vendor should again sell the estate of

which, by reason of the first contract, he is only seized in trust, he will be considered as selling it for the benefit of the person for whom, by the first contract, he became trustee, and therefore liable to account. 2 *Spence's Eq. Jur.* 310. Or the second purchaser, if he have notice at the time of the purchase of the previous contract, will be compelled to convey the property to the first purchaser. *Hoagland* v. *Latourette,* 1 *Green's Ch.* 254; *Downing* v. *Risley,* 2 *McCarter* 94. A purchaser from a trustee, with notice of the trust, stands in the place of his vendor and is as much a trustee as he was. 1 *Eq. Cas. Abr.* 384; *Story* v. *Lord Windsor,* 2 *Atk.* 631. The *cestui que trust* may follow the trust property in the hands of the purchaser, or may resort to the purchase money as a substituted fund. *Murray* v. *Ballou,* 1 *Johns. Ch.* 566, 581. It is upon the principle of the transmission by the contract of an actual equitable estate, and the impressing of a trust upon the legal estate for the benefit of the vendee, that the doctrine of the specific performance of contracts for the sale and conveyance of lands mainly depends.

The defendant insists that he holds the lands discharged of any trust in favor of Haughwout, or the complainants, by reason of his being a bona fide purchaser for a valuable consideration without notice.

The proof is, that at the time of the delivery of the deed, $400 of the consideration money was paid, and the balance secured by mortgage. Conceding that the $400 was actually paid before Murphy had notice of Haughwout's claim, the defence of a bona fide purchase is not supported. Before the mortgage became due, Murphy had actual notice of the existence and nature of Haughwout's claim.

The defence of a bona fide purchase may be made by plea, in bar of discovery and relief, or by answer, in bar of relief only. If made by plea, the payment of the whole of the consideration money must be averred. An averment that part was paid and the balance secured by mortgage, will not be sufficient. *Wood* v. *Mann,* 1 *Sumner* 506. Proof of the

payment of the whole purchase money is essential to the defence, whether it be made by plea or answer. *Jewett* v. *Palmer*, 7 *Johns. Ch.* 65; *Malony* v. *Kernan*, 2 *Drury & Warren* 31; *Losey* v. *Simpson*, 3 *Stockt.* 246. Notice before actual payment of all the purchase money, although it be secured and the conveyance executed, or before the execution of the conveyance, notwithstanding the money is paid, is equivalent to notice before the contract. 2 *Sug. V. & P.* 533 (1037); *Hill on Trustees* 165. If the defendant has paid part only, he will be protected *pro tanto* only. 1 *Story's Eq.*, § 64 *c.* ; *Story's Eq. Pl.*, § 604 *a.*

What the measure of relief shall be in cases where the deed has been executed and delivered and part of the purchase money paid before notice of the previous contract to sell to another, was elaborately discussed by the counsel of the appellants. The Chancellor held, under the authority of *Flagg* v. *Mann*, 2 *Sumner* 487, that a contract of purchase, executed by delivery of the deed and payment of part of the purchase money without notice of the previous contract, gave the purchaser a right to hold the land, and that the equity of the person with whom the previous contract was made, was merely to have the unpaid purchase money.

The law of the English courts is, that until the defence of a bona fide purchase is perfected by the delivery of the deed of conveyance, and the payment of the entire consideration money, such purchaser is without any protection as against the estate of the equitable owner under a prior contract, even though he contracted to purchase, and accepted his deed and paid part of the purchase money in good faith; his only remedy being against his vendor to recover back what he has paid on a consideration which has failed. In some of the American courts this doctrine has been qualified to the extent of enforcing specific performance of the prior contract, on condition that the purchaser shall be indemnified for the purchase money paid, and also for permanent improvements put upon the property before notice, on the principle that he

who asks equity must do equity. The cases are collected in 2 *Lead. Cas. in Eq.* 1; notes to Basset *v.* Nosworthy.

The doctrine of the English courts is necessary to give effect to the principle that in equity, immediately on the contract to purchase, an equitable estate arises in the vendee, the legal estate remaining in the vendor for his benefit. Qualified by the obligation to make compensation to any subsequent bona fide purchaser, who has paid part only of the consideration money, for all disbursements made before notice, the rule is every way consonant with correct principles. Such indemnity is protection *pro tanto.*

But whatever the nature of the relief may be in cases where the naked question of the acceptance of a deed and payment of part of the consideration before notice is presented, the relief indicated by the Chancellor is the only relief the complainants would be entitled to under the circumstances of this case. The rule of law which deprives a subsequent purchaser who has contracted and accepted a conveyance, and paid part of the purchase money in good faith, of the fruits of his purchase without indemnity, is exceedingly harsh, and often oppressive in its application. Mitigated by the obligation to make indemnity for payments and expenditure before actual notice, its operation is nevertheless frequently inequitable. A party who asks the enforcement of a rule of this nature against another who is innocent of actual fraud, must seek his remedy promptly. He may lose his right to specific relief against the lands by laches, and be remitted to the unpaid purchase money as the only relief which will be equitable. In cases where the prayer is for the specific performance of a contract between the immediate parties to the suit, delay in filing the bill is often of itself a bar to relief. *Merritt* v. *Brown,* 6 *C. E. Green* 401.

The agreement between Haughwout and Boisaubin was made on the 24th of September, 1863. In February, 1864, Haughwout gave Boisaubin notice of his election to take the property under the agreement. After this notice was given, Boisaubin laid the property out in lots and publicly offered

them for sale.  Murphy's deed for the three lots of which he became the purchaser, was executed and delivered in August, 1865.  The bill in the suit of Haughwout *v.* Boisaubin, was filed the last day in the same month.  The solicitor who appeared for Haughwout in that suit, had notice of the existence of Murphy's deed within a few days after his bill was filed.  Boisaubin, in his answer, which was filed on the 3d of November, 1865, specifically sets out the fact of the conveyance to Murphy and the circumstances connected therewith.  Murphy was himself examined as a witness on the 5th of April, 1866, and testified in relation to the conveyance to him.  Haughwout must be charged with notice as early as April, 1866, that Murphy intended to assert his right to the land.  The bill in this case was not filed until the 4th of April, 1868.  After this long delay it would be inequitable to enforce specific performance against the defendant.  The fact that there were delays in the prosecution of that suit to final decree, which were unavoidable, ought not to prejudice Murphy.  He should have been made a party to that suit.

Besides that, the bond and mortgage which were given by Murphy to Boisaubin for the unpaid purchase money, were assigned by Boisaubin to one Geoffrey, on the 16th of April, 1866, and by Geoffrey further assigned to William Davidson, on the 2d of July of the same year, and notice of such assignment given to Murphy by the solicitor of Davidson.  The money due on the mortgage was paid at its maturity by Murphy to Davidson's solicitor.  That Davidson, in the transaction, was acting for Haughwout, and that the money wherewith this assignment was procured was paid by Haughwout, and that the proceeds when collected were realized by him, are indisputable.

That the assignment was made by Geoffrey to Davidson, as collateral security, will not affect the case.  When Murphy received notice of the prior equitable title of Haughwout, he was entitled to have the security he had given for the unpaid purchase money surrendered.  *Tourville* v. *Naish,*

3 *P. Wms.* 307. The subsequent assignments were taken and the money received, with full notice of all the circumstances. The money received on the mortgage Haughwout still retains. It is no answer to say that in decreeing specific performance Murphy may have the money refunded to him. Haughwout might have insisted upon having the land itself, or at his option, pursued the proceeds of the sale. He cannot have both. By accepting a security given for the purchase money, he is deemed to have affirmed the sale so far as respects the purchaser. *Murray* v. *Lylburn,* 2 *Johns. Ch.* 441; 2 *Story's Eq.,* § 1262; *Scott* v. *Gamble,* 1 *Stockt.* 218.

The complainants are not entitled to relief. The decree of the Chancellor is affirmed, with costs.

The whole court concurred.