The bill is by the heirs-at-law of Josephine Tully against her surviving husband and other heirs-at-law, and seeks the partition of lands of which she died seized on July 20th, 1931, and without issue.
On November 1st, 1890, she contracted in writing to purchase a small house and lot in West Orange for $1,450; $250 down, $200 a year in $50 installments, until she paid $650, at which time a deed was to be delivered and a purchase-money mortgage taken by the vendor for the balance of $800. She was unmarried on the date of the contract but married James Tully, the defendant, on June 15th, 1902. She took title *Page 325 
to the premises by deed dated October 1st, 1907, and recorded October 16th, 1907. There is no record of any purchase-money mortgage. The contract did not say when the vendee should be entitled to possession; but the proof is that she occupied a room in the house before her marriage and subsequent thereto lived there with her husband until sometime after the delivery of the deed.
The rights of the complainants to a partition of the lands involved, and which are denied by the defendant husband, are dependent upon the proper construction of the word "purchased," as used in chapter 41, P.L. 1926 (Rev. Supp. Comp. Stat. p.454 § 13b), which reads as follows:
"Hereafter, when any married person shall die seized of any lands, tenements or hereditaments, in his or her right in fee-simple without devising the same in due form of law and without leaving lawful issue, but leaving a husband or wife, him or her surviving, then and in that case the said person so surviving, whether it be husband or wife, shall take an entire estate in fee-simple in the deceased's lands, tenements or hereditaments; provided, however, this act shall only apply to property of which husband or wife may die seized of, which hadbeen purchased by husband or wife during coverture." Rev. Supp.Comp. Stat. p. 454 § 13b.
The complainants and the other heirs-at-law contend that Mrs. Tully purchased the property in 1890, when she entered into the contract; and that consequently, it was not purchased during coverture. The husband replies that the purchase was made when the deed was delivered and title passed in 1907, which was five years after the marriage, and that, therefore, the property was
purchased during coverture. Thus the issue is clear: did the legislature mean "acquired title" by its use of the word "purchased," or did it mean to include agreements to acquire title? If the former meaning was intended the surviving husband will prevail, for it is a fact that the title was passed to Mrs. Tully during coverture. On the other hand, if it be held that a contract to purchase is a purchase, it follows that the property here was purchased before coverture, and the statute does not vest the fee in the husband. *Page 326 
It is a fundamental rule of construction of statutes that the court should endeavor to ascertain and give effect to the intention of the legislature. Morris Canal and Banking Co. v.Central Railroad Co., 16 N.J. Eq. 419; Thompson v. Egbert,17 N.J. Law 459; Commercial Trust Co. of New Jersey v. HudsonCounty Board of Taxation, 86 N.J. Law 424; affirmed,87 N.J. Law 179; O'Neill v. Johnson, 99 N.J. Law 317; State v. Cortese,104 N.J. Law 312; Clarkson v. Ley, 106 N.J. Law 380.
Words in a statute should be given their ordinary and common meaning. Conover v. Public Service Railway Co.,80 N.J. Law 681; Heston v. Atlantic City, 93 N.J. Law 317, but the intention rather than the letter should prevail. Associates ofJersey Co. v. Davison, 29 N.J. Law 415; Rudderow v. WestJersey Ferry Co., 31 N.J. Law 512.
Wherever possible the meaning in which the legislature intended to use the words in a statute must be gathered from the entire context of the statute and all parts of the statute should be read together. Morris Canal and Banking Co. v. CentralRailroad Co., supra; Koch v. Koch, 79 N.J. Eq. 24.
The complainants lay great stress upon the principle that upon the execution of a contract for the sale of lands the purchaser becomes the equitable owner of the lands, and the vendor the equitable owner of the purchase money; and that after the contract, as the court of errors and appeals said in Haughwoutand Pomeroy v. Murphy, 22 N.J. Eq. 531 (at p. 546), the vendor is the trustee of the legal estate for the vendee. They deduce from that principle that Mrs. Tully became the purchaser, to all intents and purposes and within the meaning of this statute, when she signed the contract of sale.
The statute quoted refers to lands of which the married person "shall die seized" "in fee-simple" and provides that the survivor "shall take an entire estate in fee-simple." In order that the estate may pass under the provisions of this act, there must be an estate in fee-simple of which the decedent has died seized. The word "purchased" must be interpreted to mean the acquisition of that which is to pass. *Page 327 
A fee-simple is the entire and absolute interest and property in land; it means an indefeasible legal title; the entire title and interest in land. United States v. Hyde,132 Fed. Rep. 545; affirmed, sub nom., Hyde v. Shine, 199 U.S. 62.
The word "seizin" precludes an equitable title. Chancellor Vroom, in Disborough v. Outcalt, 1 N.J. Eq. 298 (at p.305). "There must be a seizin, and this term always has reference to a legal title."
The close proximity of the words in the proviso to the words "seized" in "fee-simple" and "entire estate in fee-simple" warrants the conclusions that the same character of estate and property was referred to in the proviso.
That this interpretation is the only one which can reasonably be arrived at, is vividly illustrated by the situation which would arise if the decedent should die before a conveyance while holding an unbreached contract for purchase, entered into during coverture. It is perfectly clear that his equitable interest would not pass to the surviving spouse under the statute, there having been no seizin. It follows that the purchase referred to in the statute is the acquisition of the thing which is to pass under the act, and that is only a legal title.
Under this construction the word "purchase" is given its technical meaning, viz., the acquisition of legal title. While the word is frequently used to mean a contract to purchase and courts have recognized the possible ambiguity, the weight of authority inclines toward the acceptance of the technical meaning of the word in legislative enactments.
In the United States supreme court, in Steele v. Spencer,26 U.S. 552; 7 Law Ed. 259, it was said (at p. 262): "In the construction of registry acts the term `purchaser' is usually taken in its technical legal sense. It means a complete purchase, or, in other words, a purchaser clothed with the legal title."
Chancellor Bloomfield, a chancellor of this state of whom little is commonly known because the only one of his opinions which seems to have been published is Dean v. Anderson,34 N.J. Eq. 496, said in that case (at p. 504): "The term *Page 328 
`purchase' is ambiguous; it may be understood as alluding to the time of the agreement to purchase, and not to the time of executing the deed."
The same inconclusive result was reached in State v. Ware,71 N.J. Law 53, where the court said (at p. 55):
"Whether the proof justified a finding of the falsity of the statement that these farms had been purchased, depends upon the meaning to be given to the word `purchased.' It may mean a completed transaction, as the state contends, or it may mean a transaction still incomplete. It is unnecessary to resolve this doubt on the present record, for the judgment must be reversed upon another ground."
But our court of errors and appeals defined the word "purchase" in Berger v. United States Steel Corporation,63 N.J. Eq. 809, to mean the acquisition of property. On page 817 the court said:
"There is a technical meaning given in the law to the word `purchase,' as applied to real estate, wider than its general signification; it is the acquisition of land by other means than descent or inheritance."
It is urged by the defendant that the legislative design was to protect husbands and wives who had contributed effort or money, or both, in the acquisition of real estate; and that for that reason the statute applies only to property actually acquired during the marriage, the reasonable assumption being that it was acquired by their common effort. It is entirely possible that such a construction would be equitable and convenient; but it is too speculative and conjectural; and unnecessary in view of my opinion that the words in the proviso refer to legal estates.
I shall advise a decree for the defendant husband. *Page 329