[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 355 
This is an interesting case in both its factual and legal aspects.
On September 15, 1947, one John Oscsenda entered into a written agreement to purchase certain lands and premises designated as No. 716 Anderson Street in the City of Trenton from the defendants Michael Maurer and Susanna, his wife, for a consideration of $4,500. The initial payment of $500 was made and the balance of $4,000 was payable under the terms of the contract upon the delivery of the deed. While no specific date for the consummation of the transaction was stated, the omission is not the subject of discord. The plaintiff, Mrs. Oscsenda, was not a contracting party but significantly the agreement embodies the following term: "The deed herein mentioned shall run to the purchaser herein and to Helen Oscsenda, his wife."
Before the agreement was performed and the conveyance executed, the vendee, John Oscsenda, died intestate leaving him surviving his widow, who was mentioned in the instrument, and three daughters, the defendants Betty Griffin, Margaret Scinta, and Anna Stevens. Letters of administration of the decedent's estate were issued to his widow. The vendors are ready and willing to convey the premises in pursuance of the agreement, but to whom is a matter of incertitude.
The plaintiff in her individual interest requests this court under the authority of the Uniform Declaratory Judgment Act(R.S. 2:26-66, et seq., N.J.S.A.) to adjudicate in the *Page 356 
acknowledged circumstances the rights of the parties herein under the agreement of sale, and to declare that the administratrix should pay the balance of the purchase price and that the premises should be conveyed to her personally in observance of the term of the agreement.
The competitive insistence is that the premises constitute an asset of which the decedent died seized and that by reason of his intestacy the title should pass to his heirs at law. The consideration of the legal issues is accelerated by a motion on behalf of the heirs for a summary judgment in their favor. Rule
3:56-2.
In Siesel v. Mandeville, 140 N.J. Eq. 490,55 Atl. (2d) 167, the defendant contracted in writing to convey the designated premises to "William M. Siesel and Josephine M. Siesel, his wife." I concluded that it was consonant and compatible with our equitable jurisprudence to hold that upon the execution of the contract the vendees became the equitable owners in fee of an estate co-equal in its "incidents, properties and consequences" to a legal estate by the entirety. Haughwout v. Murphy,22 N.J. Eq. 531, 546; Cushing v. Blake, 30 N.J. Eq. 689;Martling v. Martling, 55 N.J. Eq. 771, 781, 39 Atl. 203;Brown v. Brown, 82 N.J. Eq. 40, 88 Atl. 186; 26 Am. Jur."Husband and Wife" § 76. The statement that in equity a contract for the sale of land is recognized, for most purposes, as if it were specifically executed and performed is now proverbial.
The principle that equity regards as done what ought to be done is particularly ostentatious in its treatment of contracts for the sale of real estate. Professor Pomeroy explains: "In some respects, and for some purposes, the contract is executory in equity as well as at law; but so far as the interest or estatein the land of the two parties is concerned, it is regarded as executed, and as operating to transfer the estate from the vendor and to vest it in the vendee." (Italics mine.) 2 Pomeroy's Eq.Jur. (5th ed.) § 368.
In the present case, the vendors and the vendee, now deceased, all agreed that the conveyance should be made to the contracting vendee and to his wife. Suppose the agreement *Page 357 
had been fully performed and the deed delivered in the lifetime of the vendee, would there be any doubt concerning the estate of the wife in the property?
The intention of the parties who actually made the contract is of paramount significance. They are the persons who have created the rights and obligations which emanate from the contract.Brooklawn v. Brooklawn Housing Corp., 124 N.J. Law 73,11 Atl. (2d) 83.
True, it is not evident that the plaintiff was a party to the agreement or contributed or obligated herself to contribute any portion of the purchase price, but the intention that she should be a beneficiary of the contract and of the conveyance is obvious.
It is proposed on behalf of the heirs that in its relation and application to the respective interests of the vendee and his wife the agreement ought to be recognized as an embryonic intervivos gift by the contracting vendee to his wife which remained revocable and executory at the death of the vendee. There is nothing in the contract that reserved to the vendee the privilege of altering, revoking or rescinding it. But it is said that the vendee, had he not died, might have induced the vendors to consent to a rescission or to a deletion of the term of the agreement of present pertinence or, indeed, that the vendee might have arbitrarily repudiated his covenant to purchase. The indications, however, are that the contracting parties including the vendee never changed their original intention as exhibited by the terms of the agreement and never undertook to recast the terms or to transform any of the rights, obligations, and equitable estates created by virtue of the signing of the agreement.
While equity will not lend its aid to perfect an incomplete gift, yet to render it incomplete it will not presume in the absence of evidence that a contracting party overtaken by death would not have done in respect of his obligations what he ought to have done. Who can reasonably doubt the conspicuous intention and purpose of this vendee to acquire this property for himself and his wife as tenants by the entirety?
Let us pause to suppose that the contract had provided for a conveyance solely to the wife, Helen Oscsenda. What rights *Page 358 
and obligations, if any, under such a contract would have been extinguished by the occurrence of the death of her husband before the consummation of the sale? Would the contractual obligation of the vendors to convey to Mrs. Oscsenda be thereby terminated or their refusal to convey sustained by the defensive averment that the proposed conveyance to the wife was an incomplete intervivos gift? No. The donor of the gift alone could assert that defense and only against the claim of his wife. Would not in the supposititious case the equitable title to the premises have vested in the donee upon the execution of the contract to sell and to purchase? Would not the vendors in such circumstances be legally obliged to convey the premises to the wife as the designated grantee in whom it was agreed that the legal title should be vested? I think so.
It is the indubitable inference to be drawn from the factual circumstances of this case that the deceased vendee intended by his contract to disburse his money to acquire the property not only for himself but also for his wife, to be owned by them as tenants by the entirety. It must be presumed that he and the vendors understood that the right of survivorship would attach by operation of law.
The influential point in this case is that in equity a contract for the sale of land, upon its unqualified approval, immediately constitutes the vendor the trustee of the legal estate for the designated future recipients of the title who, likewise at once, become the equitable owners of the land. Therefore it was by virtue of the consummation of the contract that an equitable interest in the land accrued to the plaintiff of which she was not deprived by any voluntary act of her husband. I am aware that at law the contract would be regarded as wholly executory.
I entertain no doubt of the qualification of the plaintiff to seek relief as a party for whose benefit the contract was made.R.S. 2:26-3.6, et seq., N.J.S.A.
The purchase of the property was a valid obligation of the decedent which should be discharged by his estate; the vendors should thereupon convey the property to the plaintiff.
 A judgment declaratory of my conclusions may be presented. *Page 359