[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 49 
The question is whether the administrator pendente lite or the heirs of the decedent are entitled to surplus money arising from a mortgage foreclosure sale.
The property was owned by William Hanson, subject to a first mortgage of $7,000 and a second mortgage of $3,000, both held by the complainant William Courtney. On January 2, 1947, William Hanson and Mildred Hanson, his wife, entered into a contract with Carle H. Daube for the sale of this property to him for $25,805, under which title was to be conveyed to him on February 1, 1947. On January 23, 1947, William Hanson and his wife executed and delivered to their attorney a general warranty deed to be delivered to Daube at the time of closing. On January 27, 1947, William Hanson died intestate, leaving surviving his wife and four children: Lester, Ruth, Grace and Richard, the last named a minor. On February 1, 1947, under the provisions of the agreement of sale, Daube went into possession, thereafter made improvements and repairs to the property, and still continues in possession. On August 26, 1947, Monroe Levy was appointed administratorpendente lite of the estate of William *Page 50 
Hanson. On October 21, 1947, the administrator applied to the Orphans' Court, under R.S. 3:23-3 et seq., for the fulfillment of the contract of sale, and on December 5, 1947, the Orphans' Court decreed the fulfillment and directed the administrator to make a deed to Daube under the statute.
On November 25, 1947, Courtney filed a bill to foreclose his second mortgage of $3,000; on March 16, 1948, a fieri facias issued for sale on April 14, 1948; on April 12, 1948, Peter R. Del Vecchio paid Courtney the amount due, took an assignment, and had the sale adjourned from time to time. After the assignment to Del Vecchio, Courtney filed a bill to foreclose the $7,000 first mortgage. Thereupon, Del Vecchio directed the sale on the foreclosure suit of the $3,000 mortgage to proceed, and on August 11, 1948, the property was sold by the sheriff to Carle H. Daube for $12,100, subject to the first mortgage of $7,000 and taxes for 1947 and 1948. The surplus money in controversy arose from this sale. Del Vecchio as the grantee of Lester Hanson and his wife, Ruth Hanson and her husband, and Richard Hanson, single, heirs-at-law of William Hanson, petitioned for the surplus money as the property of the heirs. The administrator petitioned for such money as the property of the next of kin.
On September 26, 1947, after the appointment of the administratorpendente lite and before the administrator made his application to the Orphans' Court, Lester, as heir, and his wife, filed a bill for the partition of the premises. The administrator filed an answer alleging that the complainants have no interest or estate which entitles them to prosecute the alleged cause of action. A motion to strike this answer was denied. Hanson v. Levy,141 N.J. Eq. 103 (Ch. 1947). A motion by the administrator to dismiss the partition suit was held pending the outcome of this appeal.
In equity, upon an agreement for the sale of lands, the contract is regarded, for most purposes, as if specifically executed. The purchaser becomes the equitable owner of the lands, and the vendor of the purchase money. After the contract the vendor is the trustee of the legal estate for the vendee. Before the contract is executed by conveyance, the lands *Page 51 
are devisable by the vendee and descendible to his heirs as real property; and the personal representatives of the vendor are entitled to the purchase money. Haughwout and Pomeroy v. Murphy,22 N.J. Eq. 531 (E. A. 1871).
Appellant argues that the equitable conversion was defeated in this case by (1) the refusal of the vendee to take title; (2) the extinction of the contract of sale by consent of both parties; and (3) the decree of foreclosure.
Nothing will defeat the equitable conversion arising out of the contract of sale, except invalidity or unenforceability of the contract. Sugden on Vendors (2nd Amer. Ed.) 143; 4 Pom. Eq.Jur. (5th Ed.) 479, § 1161. There is nothing in the record which impugns the validity or enforceability of this contract. If the contract is valid and enforceable, the vendee's refusal to take title will not, standing alone, be a bar to specific performance, and therefore it cannot defeat the equitable conversion.
The claim that the contract is extinguished by the consent of both parties is not supported by the record. The personal representative not only did not rescind the contract, but took action to enforce performance. No action taken by the heirs can defeat the equitable conversion.
The claim that the decree of foreclosure defeated the conversion is also without merit. The equitable conversion came into effect in order to carry out the intention of the vendor. 4 Pom. Eq. Jur. (5th Ed.) 473, § 1159. The surplus money arising out of the sale on foreclosure is as much the property of the next of kin as would be the proceeds of the sale under the contract if performed.
The orders under appeal are affirmed. *Page 52