REDDISH and OHLEN, appellants, and MILLER'S ADMIN-
ISTRATOR, respondent.

1. Where A makes a contract with B and C for the sale to them of his
real estate, and dies before the deed is to be executed, and on the day the
deed is to be delivered the heir-at-law and the widow refuse to join in
executing the conveyance, a decree will not be made to compel specific
performance by the purchasers, on a bill filed by the administrator of A,
for the benefit of the widow, (creditors not being interested in the litiga-
tion,) after the land has depreciated in value.

2. *Quere:* Has the widow any remedy against the heir-at-law? The
bill dismissed only as to appellants, and retained as to the other parties, in
order that she may raise that question.

Appeal from a decree of the Court of Chancery. The
opinion of the Chancellor is reported in 10 *C. E. Green* 355.

*Mr. McCarter*, for appellants.

*Mr. Vanatta*, Attorney-General, for respondent.

The opinion of the court was delivered by

VAN SYCKEL, J.

John B. Miller, being the owner in fee of a tract of about
fifty acres of land in Morris county, on the 10th day of June,
1872, entered into a contract in writing with Jehiel K. Hoyt,
by which, for the consideration of $39,000, he agreed that he
would convey the said premises, on or before the 1st day of
September then next, to said Hoyt, his heirs and assigns, or to
such person or persons as Hoyt might appoint, by deed con-
taining full covenants of warranty, clear of all encumbrances.
Hoyt paid $100 of the consideration money at the time the
agreement was signed, and stipulated for the payment of
$4900 on the delivery of the deed, and the execution of a
mortgage upon the premises conveyed for the residue of the
purchase money, payable at the expiration of seven years from

its date, with interest thereon, payable annually, and to begin to run six months after the delivery of the deed. In the latter part of August, Miller and Hoyt agreed to extend the time for the delivery of the deed to the 1st day of October then next, before which last-mentioned day Miller died intestate, leaving a widow and one child, the defendant David L. Miller, his sole heir-at-law. There was a prior agreement in writing, signed by John B. Miller on the 25th of April, 1872, by which he undertook to convey said premises to Hoyt on or before the 1st day of June, 1872, on substantially the same terms, which conveyance Hoyt had the option of refusing to accept. In order to avail himself of the benefit of this latter contract, Hoyt, on the 28th day of May, 1872, entered into an agreement with Henry E. Reddish, Henry C. Ohlen and Charles T. B. Keep, by the terms of which the title to the said lands was to be conveyed by Miller to said Reddish and Ohlen as joint tenants, and providing a scheme by which, in the course of seven years, the premises were to be re-sold in lots for the benefit of the several parties thereto, in the proportion therein specified.

On the 28th day of September, 1872, Hoyt gave notice in writing to David L. Miller, the heir-at-law, that on the then approaching 1st of October, he, Hoyt, would be ready to perform his part of the agreement of June 10th, and desired said Miller to convey the premises to said Reddish and Ohlen on that day. On the 1st day of October, 1872, Reddish and Ohlen tendered to David L. Miller so much of the purchase money as was to be paid on the delivery of the deed, and also a bond and mortgage, in due form, for the balance thereof, and demanded a deed. David L. Miller thereupon offered to convey the property to them if the money and bond and mortgage were delivered to him, and offered a warranty deed, with full covenants, duly executed by himself and wife, but they refused to accept the deed unless Miller would deliver with it a release of dower, executed by the widow of his father, and also procure to be satisfied of record a number of judgments outstanding against him. David L. Miller offered to indem-

nify them as to the judgments against his father, out of the money to be paid by them, but they refused to take the deed without the widow's release. On the same day last mentioned, the solicitor of the complainant, to whom letters of administration of the estate of John B. Miller had been granted, gave notice to the solicitor of Reddish and Ohlen that they must not make the payment called for by the contract of June 10th, 1872, to David L. Miller; that said Miller was merely a trustee; that the widow was entitled not only to dower, but to a share of the personalty of her husband, and that they would be held responsible for any payment of the purchase money to David L. Miller, which imperiled her rights.

From this time forth until after the filing of the bill in this cause, no communication, verbal or otherwise, passed between the parties to this suit, or any of them, respecting this transaction, except that on the 13th of December, 1872, the widow gave notice in writing to the complainant, that she would execute a release of her dower to Reddish and Ohlen, provided the purchase money was paid to the complainant, as administrator of her husband, but that she would not do so if it was paid to the heir-at-law.

In this condition of affairs, the administrator of John B. Miller, on the 20th day of December, 1872, filed his bill against Hoyt, Reddish, Ohlen, David L. Miller, and the widow, praying that the contract of June 10th, 1872, might be specifically performed by Reddish and Ohlen, and particularly that it might be decreed that David L. Miller was seized of the legal title as trustee for the purchasers; that he be required to convey to them; that it might be decreed that the widow was not entitled to dower in the lands, and that her rights in and to the purchase money be ascertained and paid to her under the direction of the court. It is admitted that the estate of John B. Miller, other than this real estate, was ample to pay his debts; that the bill was not filed on behalf of creditors, and that they had no special interest in it. David L. Miller has been in possession of the lands in controversy ever since the death of his father. To this bill the defendant David

L. Miller answered, setting up that the contract of June 10th, 1872, was fraudulently obtained by imposition upon his father, who had reached the age of eighty-six years, and was much enfeebled in body and mind, and that therefore it was inequitable and unjust to enforce it against him.

The defendants Hoyt, Reddish and Ohlen, in their answer, insisted that it was highly important to the success of their scheme to have a conveyance at the time agreed upon, and that it could not justly be enforced against them at the time the bill was filed. The Chancellor, on the 24th day of April, 1875, made a decree that Reddish and Ohlen should execute the contract, and pay $4900 of the purchase money, with interest from the 20th day of December, 1872, the day on which the bill was filed, and secure the balance, with interest, as if the deed had been delivered to and accepted by them on that day. From this decree the defendants Reddish and Ohlen have appealed, but the defendant David L. Miller has not appealed.

Under the circumstances stated, I think the case is not different in its legal aspect, so far, at least, as the defendants Reddish and Ohlen are concerned, from what it would be if the bill had been filed by the widow. The complainant is a mere trustee, seeking to recover the purchase money for the widow and heir, who alone had the power to make such a title as the purchasers were bound to accept. Unless they united in executing their part of the contract, the vendees could not be placed in a position where they, or any one on their behalf, could call upon them to perform. For the want of such concurrent action on their part, the purchasers were unable to procure a good title at the stipulated time, although they were ready, and offered to perform on their part. The widow and heir-at-law assumed a hostile attitude towards each other, and not only failed and neglected to offer the requisite title on the due day, or at any other time, but the heir persistently refused to recognize the validity of the agreement into which his father had entered. Conceding that on the day the bill was filed, Reddish and Ohlen should have ac-

cepted a good title if it had been offered, that they were bound to perform on that day if the other party was ready to execute the contract, it is obvious that by no fault of their own, but on account of the default of the other party, they could not have obtained a title, if they had been not only ready, but anxious to do so.    It is true that the heir, and not the widow, was mainly, if not wholly, in fault; but for his action the purchasers cannot be held responsible.    Their entire engagement was to pay the purchase price on delivery or tender of the deed; they never assumed any liability for the conduct of those through whom the conveyance was to come to them.

The inability of the purchasers to obtain a conveyance, was not removed until the final decree of the Court of Chancery was rendered, in April, 1875, during all which time the heir-at-law strenuously resisted the right of the purchasers to a conveyance.    It is manifestly, therefore, not a question whether the purchasers were, in equity, bound to accept a title, and perform on their part on the day the bill was filed, because they could not have acquired a good title at that time, or at any other time, before the rendition of the final decree in the court below.    If they had offered to consummate the contract on the day the bill was filed, or at any time before final decree, their offer would not have been accepted.    It is not equitable, therefore, to regard the filing of the bill as the offer of a deed, because the parties who should have conveyed would not do so on that day, or at any time before, and equity could not compel a conveyance until the case was ripe for final decree. The filing of the bill did not enable the purchasers to obtain possession of the land, nor give them any control whatever over it, for the purposes of the plan which they had adopted to dispose of it.    For any useful purpose whatever, it was wholly unavailable, and absolutely beyond their reach.    The filing of the bill cannot be regarded, in any just sense, as an offer to make the title; on the contrary, one of the principal questions at issue in the litigation was, whether the purchasers were entitled to have a conveyance, and until that was judicially

determined, it could not be known whether an offer of a conveyance would be made.

The decree required Reddish and Ohlen to pay interest on the cash portion of the purchase money from the time of filing the bill, and on the residue thereof at the expiration of six months from that date, the possession of the premises having been in the heir-at-law during the entire period of the litigation.

In *King* v. *Ruckman,* 9 *C. E. Green* 556, it was held by this court that when a vendor refuses to convey real estate according to his agreement, and keeps the vendee out of possession, and the rents and profits are less than the interest on the purchase money, the vendor will not be allowed such interest; under such circumstances, the vendee will not be required to pay interest on the purchase money. The circumstances of this case bring it fairly within this rule, and the decree, so far, at least, as it requires the payment of interest, is erroneous. The purchasers, therefore, upon the rendition of the decree, were not bound to accede to it and accept a conveyance upon such terms. It thus appears that from the time the contract was entered into until the present day, it has not been in the power of the purchasers to procure a proper title upon terms to which they should be held, and the case therefore resolves itself into the question whether they should be compelled to accept a conveyance tendered now for the first time.

Since the bill in this case was filed, there has been so much depreciation in the value of real estate, that it is quite clear that a heavy loss would fall upon the vendees if they are required to take the property now. After the lapse of so much time, it would not be equitable to impose such burden upon them, unless they have caused, or, at least, materially contributed to the delay which has ensued. It is said that although they tendered the purchase money and demanded a conveyance, they did not expect their tender would be accepted, and did not really desire that it should be; but the law did not require them to be anxious for the execution of

their bargain; they might even repent it, provided they were ready to abide by it, and did all they were under legal obligation to do. Neither was it their duty to pursue the widow and urge her to join in the conveyance, nor are their rights to be impaired or affected in this contention because of their failure to do so. It must be conceded that up to the time of filing the bill, the purchasers had never refused to perform, and were in no fault whatever. After the bill was filed, they put in their answer, stating facts which, in their view, rendered it inequitable to compel a specific performance. They did not decide the question for themselves, and by refusing to accept the offer of a deed, assume the responsibility of an error in judgment. No proper conveyance was ever offered to or obtainable by them, and they, therefore, had no opportunity to exercise their judgment in the premises. Being entitled to a deed, they were offered a lawsuit; and thus drawn into litigation without an opportunity to avoid it, they very properly submitted themselves to the judgment of the court.

The parties adverse to them occupy a different position. The heir-at-law, on the day the deed was to be delivered, refused to execute it, except upon inadmissible terms; the widow voluntarily absented herself, and did not offer to join in the conveyance, and the administrator contented himself with giving notice to the purchasers not to pay the purchase money to the heir-at-law. Without further action on the part of either of the three, they resorted to a bill in equity to settle their own quarrels, and, after three years of strife, they seek to compel the purchasers to take what, hitherto, they had never offered, and had been wholly unable to give them, by reason of their own want of harmony. This cannot be done without imposing upon innocent purchasers the entire loss occasioned by the willful misconduct of the heir, and giving to him an advantage from his own wrong.

The apparent equity in favor of the widow to have the lands treated as personal estate as between herself and the heir, undoubtedly impelled the Chancellor to make the decree appealed from. Its error lies in the fact that it makes the

appellants liable for the misconduct of one over whom they had no control, for whom they made no engagement, and between whom and themselves no complicity has been charged or shown. If a loss falls upon the widow, it is not in consequence of any act or omission on the part of Reddish and Ohlen, or on the part of any one for whose action they can justly be held amenable. During the delay in obtaining a decree which would render performance possible on the part of the appellants, the circumstances of the case have so changed that time has become a material element in the transaction, so that it is now clearly too late to enforce the agreement. In the language of Judge Story, cited by this court with approbation, in *Merritt* v. *Brown*, 6 *C. E. Green* 406 : " And even when time is not thus, either expressly or impliedly, of the essence of the contract, if the party seeking a performance has been guilty of gross laches, or has been inexcusably negligent in performing the contract on his part, or if there has, in the intermediate period, been a material change of circumstances affecting the rights, interests, or obligations of the parties ; in all such cases, courts of equity will refuse to decree any specific performance, upon the plain ground that it would be inequitable and unjust."

The widow has died pending these proceedings. Whether her representatives have any remedy against the heir-at-law is a question which I have not examined, and upon which this court intimates no opinion. But in order that they may have an opportunity of raising that question by filing a cross-bill, or by such other proceeding as they are advised is material, I am of opinion that the decree of the Chancellor should be reversed, with costs in this court and in the court below, and the bill dismissed only as to the defendants Hoyt, Reddish, and Ohlen, and retained as to the other defendants.

Decree unanimously reversed.