This is a suit for specific performance. On November 2d 1928, one Minnie Stockfleth entered into a contract to sell to *Page 4 
Immanuel Britten certain property, 139 Grove street, Montclair. The contract was signed by her husband and duly acknowledged. On November 30th, 1928, Mrs. Stockfleth died intestate. She left her surviving her husband and a son, Harry, as her heirs-at-law and next of kin. Harry is married and his wife's name is Beatrix. Letters of administration were granted the husband on December 12th, 1928, prior to the date for closing. The property was relieved from the inheritance tax lien before the date for closing.
The chief point raised by defendant for not accepting title is that the property is liable to be sold at any time during one year from date of decedent's death to pay any debts there may be against her estate, and the title therefore is unmarketable. There is no merit in this contention. Mrs. Stockfleth signed a valid contract for the sale of her property. From that time there was an equitable conversion of the property from realty to personalty. As she died intestate, the property, being personal, went to the next of kin and not to the heirs-at-law. This being so, there is no real estate to be sold for payment of debts.
Miller v. Miller, 25 N.J. Eq. 354, is the leading case on this proposition. I quote from the syllabus:
"1. An administrator is entitled to enforce specific performance of a contract made with his intestate for the purchase of real estate.
"3. A contract for the sale of real estate works an equitable conversion of the land into personalty from the time when it was made and the purchase-money becomes, thereupon, a part of the vendor's personal estate and as such is distributable upon his death to his widow and next of kin.
"4. In equity on the execution of a contract for the sale of real estate the vendor becomes trustee of the property for the purchaser and upon his death intestate his heir-at-law becomes such trustee in his stead. Judgments against the heir-at-law are not liens upon the property."
It is true that in Reddish et al. v. Miller's Adm., 27 N.J. Eq. 514,
the court of errors and appeals refused specific performance. A careful reading of the opinion, however, discloses that the reason was that the heirs-at-law refused to consummate the deceased's contract. The general principles *Page 5 
as I have stated them above were reiterated. In the present case all parties in interest, the husband, the son, the son's wife and the administrator unite in the request for specific performance.
In Coles, c., Executors, v. Feeney et al., 52 N.J. Eq. 493;Miller v. Miller, supra, is cited with approval. The court says, inter alia:
"The right of the executor to enforce the contract did not depend on the existence of a power to sell. If this contract of sale was a valid contract its effect was to work a conversion of the land from real to personal property. This it was in the power of the testatrix to do, notwithstanding her will, which was made before the date of the contract, such conversion, if made, had the effect of taking the land out from under the operation of the first clause of her will and giving the proceeds of it to her residuary legatees and devisees as a part of the personal estate and in the absence of any power of sale, it seems to me entirely clear that the executors would have the right and it would be their duty to take proper proceedings to perfect the conversion by compelling the transfer of the legal title to the purchaser and obtaining from him the purchase money."
A much more recent case is that of Triplett v. Ivins,93 N.J. Eq. 202, decided by Vice-Chancellor Leaming and affirmed by the court of errors and appeals, which adopted as its own the opinion of the learned vice-chancellor.
The opinion says in part —
"In Williams on Executors, paragraph 551, the rule is stated as follows: `It is an established doctrine in courts of equity that things shall be considered as done which ought to have been done; and it is with reference to this principle that land is under some circumstances regarded as money and money as land.' It was laid down by Sir Thomas Sewell, M.R., in Fletcher v.Ashburner, 1 Bro. C.C. 497, `that nothing was better established than this principle that money directed to be employed in the purchase of land, and land directed to be sold and turned into money are to be considered as that species of property into which they are directed to be converted; *Page 6 
and this in whatever manner the direction is given, whether by will, by way of contract, marriage articles, settlement, or otherwise, and whether the money is actually deposited or only covenanted to be paid, whether the land is actually conveyed or only agreed to be conveyed. The owner of the fund, or the contracting parties, may make land money, or money land. It follows, therefore, that every person claiming property under an instrument directing its conversion must take it in the character which that instrument has impressed upon it; and its subsequent devolution and disposition will be governed by the rules applicable to that species of property.'"
In 36 Cyclopedia of Law and Procedure 765, the rule is thus expressed:
"On the death of the vendor, since the vendor's interest is regarded in equity as personalty it passes to his personal representatives and they may sue to enforce payment and join the heirs or devisees for the purpose of compelling conveyance of the legal title from them to the vendee."
Numerous cases from this and other states are cited. It is unnecessary to refer to further authorities. It is clearly apparent from the above that the land is not subject to the debts of the decedent and therefore the first objection falls.
A large amount of correspondence between the parties was introduced in evidence, and this objection is practically the only one raised in the letters. Three other points are, however, made in the answer. The first of these is that the property is encumbered with mortgages. This is not a valid objection.
In Randolph v. General Investors Co., 96 N.J. Eq. 227, I held:
"Vendor's right to specific performance held not barred by encumbrance of property by judgment at time fixed for passing title."
In Thomas v. Flanagan, 99 N.J. Eq. 198, the court says:
"Equity may decree specific performance of contract with application of purchase-money to pay outstanding liens."
Moreover, the contract contains the following provision: *Page 7 
"It is understood and agreed that the party of the first part are to have the privilege of using the purchase-money herein mentioned to pay off any mortgages that may be on the property, but said money is not to be advanced until said mortgages if any are produced properly receipted for cancellation."
The second point is failure to tender. The evidence shows that defendant refused before the day set for closing to take title. Therefore, tender was unnecessary.
In the case of Serventi v. Cella, 104 N.J. Law 351, the court of errors and appeals said:
"Where purchaser under contract for sale of real estate has announced his intention not to accept deed because of defect in title of vendors to property there is no legal obligation cast on vendors to make a tender."
The last point raised is that the restrictions on the property have not been complied with. The restrictions in question read as follows:
"Subject also to the restriction that said premises shall be used for residential purposes only, and that there shall be erected thereon only one single-family dwelling house; suitable and necessary outbuildings to be used in connection with a private residence may be built in the rear of the house."
The evidence shows that there is a garage in the rear of the house. I find no difficulty in holding that in this age a garage is a suitable and necessary outbuilding, especially in a residential town like Montclair where means of transportation other than automobiles are few and far between.
I shall, therefore, find that the defendant's reasons for refusing to take title are without merit. I will advise a decree dismissing his counter-claim and directing specific performance.
The real reason for defendant's refusal to take title, in my opinion, is contained in a letter from defendant to Mr. Stockfleth, dated December 29th, 1928, and marked in evidence. It reads in part:
"In the first place if I was going to make my home at 139 Grove street in the spring as first planned that would not be so bad to have the property tied up, but I am not going to live at 139 Grove street. My daughter liked 52 Caroline road better, thus the change of plan." *Page 8 
In other words, having found a house he likes better, defendant now seeks to escape from a contract into which he legally entered. In my opinion, his residential preferences must give way to his legal obligations.