The controversial subject presented for determination arises from the adverse claims of the two petitioners for surplus moneys derived from a mortgage foreclosure sale.
Most of the antecedent factual events of present pertinency were imparted in Hanson v. Levy, 141 N.J. Eq. 103,56 Atl. 2d 411. To bring the narrative to date it is necessary additionally to divulge that during the pendency of the partition suit above cited, the holder of the second mortgage encumbering the premises in the principal sum of $3,000 foreclosed his lien, and at the sheriff's sale the property was purchased by Daube, who was the vendee named in the inter vivos contract which remained unperformed at the vendor's death. The proceeds of the foreclosure sale are in excess of the complainant's decree, resulting in a surplus fund. I am requested to determine the lawful destination of the fund.
The question may be tersely propounded in this fashion: Where the owner of real estate encumbered by a mortgage executes a valid contract to convey the premises to the vendee by warranty deed and in fact executes and delivers such a deed in escrow and dies before the consummation of the sale, whereupon the mortgage is foreclosed and the premises struck off to the vendee resulting in a fund in excess of the mortgage debt, are the decedent's heirs or the administrators of his state entitled to the surplus moneys?
In equity, a contract for the sale of land is recognized, for most purposes, as if it were specifically executed and performed. In consequence of that view, the purchaser becomes the equitable owner of the land, and the vendor the anticipated equitable recipient of the purchase money. Following the contract, the vendor is the trustee of the legal estate for the vendee. *Page 325 
Before the contract is consummated by actual conveyance, the lands are devisable by the vendee, and descendible to his heirs as real estate. Conformably the personal representatives are entitled to the purchase money. Haughwout v. Murphy,22 N.J. Eq. 531, 546; Siesel v. Mandeville, 140 N.J. Eq. 490,55 Atl. (2d) 167; Hanson v. Levy, supra.
Professor Pomeroy explains the consequential effects of the application of the doctrine: "So far as is necessary to carry out the lawful purposes of the instrument, will, deed, settlement, or contract, and to determine the property rights of all parties claiming under or through it, equity follows the doctrine into all of its legitimate consequences, and treats the property, from the time at which the conversion takes place, as to all intents of the kind and form into which it should have been changed, and determines the rights of parties to it as in that kind and form. Land directed or agreed to be sold, although yet unsold, is regarded and treated as money. It will not pass under a devise of land or of real estate. It will pass under a general gift, transfer, or bequest of personalty, or under a residuary bequest of personal property. In the absence of a will, it goes to the personal representative of the intestate who would have been or was entitled to it. It is therefore always personal assets in the hands of executors and administrators for which they are accountable * * *." 4 Pom. Eq. Jur. (5th ed.) 489, § 1164.
This theorem is characterized as the notional or fictional doctrine of equitable conversion. It is nevertheless a firmly established tenet of equity jurisprudence.
Succinctly stated, the cardinal purpose of the doctrine is to effectuate the manifest intent of the vendor and to regard that as done which by previous contract with another, both vendor and vendee have mutually obligated themselves to do. 4 Pom. Eq. Jur.(5th ed.) 472, § 1159.
The intention of the vendor is a predominantly significant factor. Here the vendor not only entered into the contract to convey but indeed in furtherance of it, he duly executed before his death the deed of conveyance. His intent is clearly exhibited. *Page 326 
In the absence of any intimation to the contrary I must assume that the contract was valid when made and enforceable at the death of the vendor. If so, it operated to create an equitable conversion of the land into personalty from the time of its execution. Miller's Administrator v. Miller, 25 N.J. Eq. 354,365, reversed on another ground, 27 N.J. Eq. 514; 4 Pom. Eq.Jur. (5th ed.), 484, § 1162.
Events subsequent to the death of the vendor have not been ignored. On December 5, 1947, a decree was entered in the Mercer County Orphans' Court authorizing and directing the administratorpendente lite of the vendor's estate to make the conveyance in fulfillment of the contract. R.S. 3:23-3, et seq., N.J.S.A.
In the partition suit the vendee expressed his willingness to consummate the agreement. The contract for some reason has not been performed and the actual eventuality has been that although having contracted to pay a price of $25,805 for the property, the vendee purchased it subject to a first mortgage of $7,000 and unpaid taxes of $902, for the sum of $12,100.
Whether in such circumstances the vendee is completely absolved from his contractual obligation or whether he may nonetheless be required to perform it upon equitable terms, is a subject concerning which this court expresses no present opinion.
It is conceded that the assets of the vendor's estate other than such as may be derived from the parcel of real estate so sold are insufficient to satisfy the decedent's debts. The petitioning administrator also advocates the rights of the creditors.
Manifestly it was the intention of this vendor to convert the real estate described in the contract into personal property. In equity, his intent should be respected unless its attainment has been defeated and frustrated by reason of some legitimate cause.
Had the vendor escaped his premature death, his deed would have been delivered to the vendee. The purchase price would have been applied to discharge the existing liens upon the property and the balance would have become part of the vendor's estate to be administered as personalty. What has so far occurred? *Page 327 
The vendee has acquired the property by utilizing a portion of the contractual purchase price to discharge one of the liens and by accepting the title subject to the remaining encumbrances with a substantial reduction in the expenditure he originally contemplated. It was the mutual intention of the vendor and vendee that the vendee should acquire title to the property. The vendee was legally obligated to purchase it at the price specified in the contract. He in fact purchased the property at the sheriff's sale.
Suffice for present purposes to resolve that such a state of affairs does not in equity demolish the mutation intended by the deceased vendor.
The petition of Peter Del Vecchio is dismissed. An order will be entered directing with certain qualifications the payment of the surplus moneys to the administrator.