**BOARD OF DIRECTORS OF SHIBUI CONDOMINIUM ASSOCIATION, Plaintiff**

v.

**CONSOLIDATED INTERNATIONAL, INC., DAVID O'CONNELL, SONIA TORRES and CARLOS TORRES, Defendants**

Civil No. 46/1991

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

February 18, 1993

HENRY V. CARR, III ESQ., St. Thomas, V.I. *for Plaintiff Shibui*

WILFREDO A. GEIGEL, ESQ., St. Croix, V.I., *for the Board of Directors of Shibui*

HODGE & FRANCOIS, P.C. (DENISE FRANCOIS, P.C., of Counsel), St. Thomas, V.I., *for Consolidated International, Inc.*

CAMPBELL, ARELLANO & RICH, ESQS. (W. MARK HILLSMAN, ESQ., of Counsel), St. Thomas, V.I., *for David O'Connell*

GERALD DENNENBERG, ESQ., St. Thomas, V.I., *for Sonia and Carlos Torres*

CHRISTIAN, *Senior Sitting Judge*

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

This matter is now before the Court on several Motions filed by Plaintiff (hereafter "Shibui") and Defendants (hereafter "Defendants" or "Consolidated" or "Torres"),[1] for summary judgment or partial summary judgment:

1. Motion of Consolidated, dated February 11, 1992, for partial summary judgment on Count 1 of its Amended Counterclaim filed May 21, 1991, on the ground that Shibui recorded in the Office of the Recorder of Deeds in St. Thomas (hereafter "the Recorder"), on or about December 5, 1990, ex parte and without probable cause, a lien against Unit 10. This Motion will be granted.

2. Motions of Consolidated and Torres for partial summary judgment, dated February 11, 1992, and May 16, 1991, based on their Counterclaims (Count 2 of Consolidated and Amended Coun-

---

[1] These Defendants (Consolidated on July 6, 1992; Torres on August 20, 1992) stipulated that their pleadings, motions, briefs and prayers for relief, whenever appropriate, are joint and may be treated by the Court as applicable to both. Defendant O'Connell settled with Shibui on August 28, 1992.

terclaims 2 and 3 of Torres), respectively, that Shibui filed in the Office of the Recorder, on March 27, 1991, Notices of Lis Pendens Nos. 1 and 2, ex parte and without probable cause, for the reason that Shibui's action does not affect title to real estate as required by 28 V.I.C., Section 130. These Motions will be granted in part and denied in part.

3. Cross Motion of Shibui, dated March 10, 1992, for summary judgment, based on its claim that Defendants installed non-conforming shoji panels to replace those damaged or destroyed by Hurricane Hugo (hereafter "Hugo") on their units without authorization from the Board of Directors, in spite of the provisions of Sections 905(e), 906, and 917 of the Condominium Act, 28 V.I.C., Chapter 33, (July 2, 1965) (hereafter "the Act"); Article V, Section 10 of the Bylaws; and the June 10, 1984, Amendment of the Bylaws. This Motion will be denied.

4. Motions of Consolidated and Torres for partial summary judgment on their Amended Counterclaims to order Shibui to grant them relief for damages suffered as a result of Shibui's failure to observe and enforce what they allege to be a mandate embodied in Section 926 of the Act, the Declaration, and the Bylaws, specifically for the conversion by unit owners of common areas[2] to limited common areas.[3] These Motions will be denied for many reasons.

---

[2] Common Areas and Facilities, as distinguished from Limited Common Areas and Facilities, unless otherwise provided in the Declaration or lawful amendments thereto, means and includes: (1) the land on which the building is located, whether leased or in fee simple; (2) the foundations, columns, girders, beams, supports, main walls, roofs, halls, corridors, lobbies, stairs, stairways, fire escapes, and entrances and exits of the buildings; (3) the basements, yards, gardens, parking and areas for storage spaces; (4) the premises for the lodging of janitors or persons in charge of the property; (5) installations of central services such as power, light, gas, water collection, storage and distribution system, hot and cold water, refrigeration, air conditioning and incinerating; (6) the elevators, tanks, pumps, motors, fans, compressors, ducts, and in general all apparatus and installations existing for common use; (7) such community and commercial facilities as may be provided for in the Declaration; and (8) all other parts of the property necessary or convenient to its existence, maintenance and safety, or normally in common use. Section 901(f) of the Act.

[3] Limited Common Areas and Facilities means and includes those common areas and facilities designated in the Declaration as reserved for the use of a certain apartment or apartments to the exclusion of the other apartments. Section 901(k) of the Act.

5. Motions of Wilfredo A. Geigel, Esquire, dated March 27, 1992, and August 5, 1992, to deny all Defendants' Motions for partial summary judgment and to grant Shibui's and the Board's Motions for summary judgment. These Motions will be denied in part and granted in part.

## II. FACTS

On July 2, 1965, the Legislature enacted the "Condominium Act".

On June 6, 1972, Caribbean Resorts, Inc., a corporation organized and existing under the laws of the Virgin Islands of the United States, with principal office situated in St. Thomas, acting as sponsor, pursuant to the provisions of the Act, submitted a Declaration establishing a plan for condominium ownership of Parcels Nos. 7 and 112 Estate Contant, No. 7A Southside Quarter, St. Thomas, Virgin Islands, together with the buildings and improvements thereon erected, in fee simple absolute, (hereafter "Shibui"). To the Declaration was attached Exhibit A, Unit Designation as per Paragraph 5 of the Declaration; Exhibit B, Limited Common Areas and Facilities as per Paragraph 9 of the Declaration, the last paragraph of which read: "Maintenance of all Limited Common Areas and Facilities is a common expense of the condominium"; Exhibit C, Value of Units and Property and Percentages in the Common Areas and Facilities as per Paragraph 10 of the Declaration, and Exhibit D, Shibui Bylaws. These documents were duly recorded in the Office of the Recorder as required by Section 914 of the Act.

Paragraph 15 of the Declaration provides:

> "*Units Subject to Declaration, Bylaws and Rules and Regulations.* All present and future owners, tenants and occupants of units shall be subject to, and shall comply with the provisions of this Declaration, the Bylaws and Rules and Regulations, as they may be amended from time to time. The acceptance of a deed or conveyance or the entering into a lease or the entering into occupancy of any unit shall constitute an agreement that the provisions of the Declaration, the Bylaws and the Rules and Regulations as they may be amended from time to time are accepted and ratified by such owner, tenant, or occupant, and all of such provisions shall be deemed and taken to be covenants running with the land and shall bind any person having at any time any interest or estate in such unit, as though such

provisions were recited and stipulated at length in each and every deed or conveyance or lease thereof".

Article I, Section 3 of the Bylaws provides that all present and future owners, mortgagees, lessees and occupants of the condominium units and their employees and any other persons who may use the facilities of the property are subject to the Bylaws, the Declaration and the Rules and Regulations.

Shibui consists of 25 condominium units. All Buildings are wood frame buildings. Declaration, Paragraph No. 3. All of the buildings are designed as Japanese style cottages. As can be seen on the Shibui Condominium Association stationery, Shihui describes itself, as "A colony of' Japanese cottages". One of the more distinctive features of these cottages are the shoji panels. Shoji is defined as "a translucent sliding panel of rice paper on a wooden frame, used in Japanese homes as partition or ·door". See Webster's Unabridged Dictionary, (2nd. ed.) 1983. At Shibui, portions of the exterior walls are also comprised of shoji panels. Consolidated's Brief at Pages 1 and 2.

Paragraph 17 of the Declaration provides:

> "All reconstruction and repairs must be made according to substantially the same plans, specifications, design and total cubic area, pursuant to which the Buildings were initially constructed".

On April 20, 1990, Consolidated International, Inc., (hereafter "Consolidated") became the owner of Unit 10 of Shibui. Recorded April 30, 1990, in the Office of the Recorder, Book 35-V, Page 363, Document No. 611. This unit was conveyed to Consolidated by Paul E. Samuels and Dorle Erickson, who owned the unit from September 19, 1986, and who installed exterior shoji panels unacceptable to the Board to replace Hugo-destroyed panels prior to conveyance of the unit to Consolidated.

On August 25, 1987, David O'Connell became owner of Unit 11 of Shibui. See Footnote 1.

On March 8, 1989, Carlos and Sonia Torres (hereafter "Torres") became owners of Unit 17 of Shibui. Recorded March 28, 1989, in the Office of the Recorder, Book 33-V, Page 417, Document No. 517.

On September 17–18, 1960, Hugo wrought extensive damage, inter alia, to the external shoji panels of six· units, including those of the Defendants herein. The Board and the unit owners, in compli-

ance with the requirement of Paragraph 17 of the Declaration, immediately embarked upon an exhaustive search to acquire external beige color shojis substantially of the type originally installed on the units to replace the shojis which were destroyed or irreparably damaged by Hugo. Not being successful, on application from the unit owners, the five-member Board,[4] some of whom had already replaced their storm-destroyed or damaged shojis with non-conforming (white or neutral color) shojis,[5] on February 17, 1990, unanimously passed a Resolution ratifying and/or approving the use of the non-conforming shojis. On complaint from a number of unit owners, in the exercise of the right vested in them by Section 907 of the Act,[6] the Board sought legal counsel as to the validity of the Resolution and was informed that the Board's action was ultra vires as it contravened the express provisions of Section 907 of the Act, Paragraph 17 of the Declaration, the Bylaws and the Rules and Regulations of Shibui. Whereupon, the Board reversed itself, by Memorandum dated June 17, 1990, and notified all six unit owners who had installed non-conforming external shojis to replace them with shojis approved by the Board, at their expense.[7] Three of the unit owners complied with the direction of the Board, but the three Defendants herein refused. This lawsuit followed.

On December 5, 1990, Shibui filed ex parte in the Office of the Recorder a Notice of Lien against Consolidated's Unit 10 for legal

---

[4] By virtue of Sections 917 and 918 of the Act and Article II, Section 1 of the Bylaws of Shibui, the affairs of Shibui are to be governed by a five-member Board of Directors.

[5] Carlos Torres, a Defendant herein, was a member of the Board and was one of these unit owners. The predecessors in title and interest of Consolidated had also made such replacement prior to any reiated action by the Board.

[6] Section 907 of the Act provides: "*Certain work prohibited.* No apartment owner shall do any work which would jeopardize the soundness or safety of the property, reduce the value thereof or impair any easement or hereditament without in every such case the unanimous consent of all the other apartment owners being first obtained". [Underscoring ours].

[7] The non-conforming shojis caused the property to begin to appear substantially different from the original intent and design of Shibui. See: deposition of Shibui's manager, Wayne Ramirez, dated August 2, 1991, and his affidavit dated March 8, 1992; Affidavit of President and Secretary of the Board during different periods of time, Jane Connerton; Affidavit of unit owner, Ellie Heckert, dated March 9, 1992; Affidavit of Michael Resch, original owner of Shibui, dated March 7, 1992; and Affidavit of Theresa S. Roberts, A.I.A., dated March 9, 1992.

fees outstanding through and including October 18, 1990, including any prior liens filed against Unit 10, in the amount of $380.00. It is uncontradicted that prior written demand for payment of this amount was never made to Consolidated, the filing of the lien was never discussed at any Board meeting or Shibui, nor was any action commenced to collect the legal fees claimed to be owed by the lien. The $380.00 was paid and the lien cancelled of record on April 11, 1991. As a result of this action by Shibui, Consolidated moved, on February 11, 1992, for partial summary judgment as to liability.

On January 18, 1991, Shibui filed a First Amended Complaint in which it asked the Court to (1) declare Defendants are in violation of Paragraph 17 of the Declaration and Article V, Section 10, of Shibui's Bylaws; (2) require Defendants to replace their installed white-colored shojis with beige/neutral fiberglass ones acceptable to the Board or its designee; (3) allow Shibui to have access to Defendants' units at a reasonable time and in a reasonable manner to replace their white-colored shojis with beige/neutral fiberglass ones; (4) enter a judgment against Defendants and in favor of Shibui for the costs that Shibui will incur should the Court permit it to replace Defendants' white-colored shojis; and (5) for costs and disbursements.

Shibui's Complaint is based on the premise that beige/neutral fiberglass shojis which make up the exterior walls of all buildings at Shibui (Paragraph 4 of Complaint) which were damaged or destroyed by Hugo, were replaced by Defendants with non-conforming shojis in contravention of Paragraph 17 of the Declaration, and Defendants refused to replace them with shojis approved by the Board, in spite of the fact that the homeowners at Shibui by an 80% vote adopted a Resolution on January 10, 1984, amending Paragraph 9 of the Declaration,[8] making each individual owner responsible for the repairs and maintenance of the exterior walls to his or her unit. The Defendants originally placed these non-conforming shojis in place of those damaged or destroyed by Hugo as an act of exigency to protect them from the elements to which they were greatly exposed. When the Board required them to not only remove the shojis installed by them but also to bear the cost of replacing them with shojis approved by the Board, the parties reached an impasse, as Defendants took the position that the adoption of the

[8] The amendment reads Article 9, but this should be Paragraph 9 instead.

June 10, 1984, Resolution notwithstanding, it was not their obligation to bear the cost of obtaining and installing the shojis approved by the Board. Further, that the Resolution dealt with maintenance and repair but not with replacement which is involved here.

On March 27, 1991, Shibui filed a Lis Pendens against Unit 10 of Consolidated, Unit 11 of O'Connell, and Unit 17 of Torres (hereafter "Lis Pendens No. 1"), without notice to any of them as required by 5 V.I.C., App. V, Rule 7(b).[9] Notice of these filings was given to these Defendants later but only after they had discovered the filings themselves. These notices were also cancelled April 19, 1991. Although these Lis Pendens notices carried the style of the present case, they recited they were being filed in connection with an action which had been commenced in Territorial Court against Consolidated "for foreclosure of condominium lien against these units for non-payment of common charges", but no such action was ever commenced against any of these Defendants nor had Consolidated ever been in arrears in its payment of common charges due to Shibui.

On April 4, 1991, Shibui filed a second Lis Pendens against both Units 10 and 17 (hereafter "Lis Pendens No. 2"), again without notice to either Defendant as required by 5 V.I.C., App. V, Rule 7(b).[10] Lis Pendens No. 2 also contained the style of the present action and referenced an action "for injunctive and/or declaratory relief".

On May 8, 1991, Torres filed an Answer and two Counterclaims, praying the Court to: (1) dismiss the Complaint; (2) issue a mandatory injunction enjoining Shibui to enforce the correction of material violations of the Shibui Condominium Declaration and Bylaws;[11] (3) award damages to Torres against Shibui for wrong-

---

[9] Uncontested, unanswered affidavit of Donna Desrochers, Officer of Consolidated, and Denise Francois, P.C., filed with the Court. Brief of Consolidated, dated February 11, 1992. Exhibits C10 and C11. See FRCP 56(e).

[10] Uncontested, unanswered affidavit of Consolidated and Denise Francois, P.C., filed with the Court. Brief of Consolidated, dated February 11, 1992. Exhibits C10 and C11. See FRCP 56(e).

[11] In summary, according to Defendants, these violations are listed as: (a) wrongful addition of units to their original units as well as wrongful use of common areas for parking; (b) although the Hugo-destroyed shojis are common area replaceable by the Board with common charge funds, it has failed to do so and is instead suing Defendants to compel them to make the replacements; and (c) failure of the Board to comply with the requirements of the Bylaws that it

fully recording a Lis Pendens against Unit 17; (4) award Torres "100% of their costs from the common fund collections created hereby pursuant to the doctrine of 'fee shifting'"; and (5) for costs and disbursements.

On May 10, 1991, Consolidated filed an Answer and Counterclaim praying for (1) dismissal of the Complaint; (2) for compensatory and punitive damages for wrongful filing of Notice of Lien on December 5, 1990, and of the Lis Pendens on April 4, 1991; and (3) for costs.

On May 16, 1991, Torres filed First Amended Answer and Amended Counterclaims I, II, and III. In Amended Counterclaim I, they prayed for the same relief enumerated in Footnote 9. The Second and Third Amended Counterclaims prayed for compensatory and punitive damages and 100% attorney's fees for the wrongful filing (ex parte) and without probable cause of Lis Pendens Nos. 1 and 2.

On January 25, 1992, Torres filed a Motion for Partial Summary Judgment as to liability on their Amended Counterclaims I, II, and III for damages as prayed for in their Answer and Counterclaim filed on May 8, 1991, supra.

On February 11, 1992, Consolidated filed a Motion for Partial Summary Judgment as to liability on its Amended Answer and Counterclaim in which it prayed for judgment (a) dismissing Shibui's Complaint; (b) declare invalid any attempt(s) to rescind the Board's February 17, 1990, Resolution concerning shoji panel material; (c) against Shibui as to liability on both of Consolidated's Counterclaims; and (d) for costs and disbursements.

On March 10, 1992, Shibui filed a Cross Motion for Summary Judgment on Plaintiff's First Amended Complaint and Opposition to Defendants' Motions for Partial Summary Judgment, praying the Court "to order Defendants to remove their non-conforming shoji panels at their expense and replace them with Board-approved ones, and for legal expense caused by their refusal to remove these panels before commencement of this lawsuit".

On March 12, 1992, the Board, represented by Wilfredo A. Geigel, Esquire, filed an "Opposition to Motion for Summary Judgment and Cross Motion for Summary Judgment' against Defendants,

obtain fire and extended coverage insurance on all common areas which include the building of shoji walls at issue here.

dismissing their Counterclaims with costs, on the ground "they are barred from bringing this suit as a result of their accepting the terms and conditions of the covenants entered into when they purchased their units at Shibui. Article 2, Section 14 of Bylaws.

On May 13, 1992, Torres filed a Response to Plaintiff's Cross Motion for Summary Judgment filed on March 12, 1992, praying that it be denied and that Torres' Motion for Summary Judgment be granted.

On May 18, 1992, Consolidated filed a Memorandum in "opposition to Plaintiff's Cross Motion(s) for Summary Judgment and a Supplemental Memorandum of Law and Fact in Support of Consolidated's Motion for Partial Summary Judgment.

On June 10, 1992, Shibui filed a Reply to Defendants' Reply to Shibui's Cross Motion for Summary Judgment, answering seriatim many points argued by Defendants in opposition to Shibui's case.

On June 24, 1992, Torres filed still another document, stating Plaintiff cited three cases incorrectly.

On July 6, 1992, Consolidated filed a Joinder in Brief of Torres dated July 2, 1992.

On August 5, 1992, Attorney Geigel, for Shibui's Board, filed a Supplementary Reply to Motion of Torres for Summary Judgment, to show why Summary Judgment is not appropriate as there are (four) several material issues of fact remaining to be tried.

On August 5, 1992, Shibui's Board filed Motion Requesting Permission to Amend Reply to Counterclaim giving eight (8) reasons why Counterclaims of Defendants should be dismissed.

On August 20, 1992, Torres filed a Joinder in all of the Briefs, Memoranda, Pleadings, attached Exhibits and Affidavits filed on behalf of Consolidated and O'Connell.

On August 24, 1992, Torres filed a Response to Plaintiff's Motion (Geigel for the Board), for Leave to Amend its Reply to all Counterclaims of Defendants Torres by adding eight (8) additional affirmative defenses, on ground that it would be greatly prejudicial to Torres, unless the Court (a) orders reargument on all Motions for Summary Judgment; (b) rebriefing; and (c) prepaid compensation by Shibui to Torres of costs to Torres of the same.

## III. DISCUSSION

1. *In Re Motions To Grant and To Deny Summary Judgment. Applicable Standard*

■■ Summary Judgment is appropriate only in a restricted group of cases where the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, indicate there is no genuine issue as to material fact, and the moving party is entitled to judgment as a matter of law. FRCP 56(c). First Jersey Nat'l Bank v. Dome Petroleum Ltd., 723 F.2d 335, 338 (3d Cir. 1983); Federal Laboratories v. Barringer Research, Ltd., 696 F.2d 271, 274 (3d Cir. 1982); Continental Ins. Co. v. Bodie, 682 F.2d 436, 438 (3d Cir. 1982); Summary Judgment is a drastic remedy, and the Third Circuit has made it clear that courts are to resolve any doubts as to the existence of genuine issues of fact against the moving parties. Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981) (quoting Tomalewski v. State Farm Insurance Co., 494 F.2d 882, 884 (3d Cir. 1974).

■ When this Court reviews requests for summary judgment, inferences which can be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976), cert. denied 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

■ In his "Opposition to Motion for Summary Judgment and Cross Motion for Summary Judgment" filed by Attorney Wilfredo A. Geigel on March 27, 1992, and his "Supplementary Reply to the Motion for Summary Judgment filed by Sonia Torres and Carlos Torres" filed. on August 5, 1992, on behalf of the Board, he first asked for dismissal of all Motions filed by all parties, including Shibui, whose Board of Directors he represents, for the reason that the record thus far indicates that there are material issues of fact to be tried, but ironically, that the Board nevertheless be granted summary judgment against all parties. Further, he contends that from the affirmative defenses that have been pleaded by Shibui, such material facts exist. In view of our decision relating to liability of Shibui for failing to bring action pursuant to Section 926 of the Act, we take the position that such issues of fact, i.e., as to alterations and changes improperly made by unit owners through the years—

from 1972 when Shibui was created to the present—as to their type, value, and the dates made—are moot as to the instant action, and therefore do not preclude the granting of summary judgment.

Nor is it inappropriate to grant or deny summary judgment with regard to Motion of Consolidated dated February 11, 1992; Motions of Consolidated and Torres dated February 11, 1992, and May 16, 1991, respectively, on their Counterclaims; and as to Shibui's Cross Motion for Summary Judgment dated March 10, 1992.

There is no dispute about any of the material facts: that Shibui recorded in the Office of the Recorder of Deeds in St. Thomas on or about December 5, 1990, ex parte, and without probable cause, a lien against Unit 10, alleging that it was to secure the payment of a condominium debt of $380.00 owed by Consolidated to Shibui, without prior demand or discussion of the obligation at any meeting of the Board, and when in fact Consolidated owed no such debt.

Secondly, there is no dispute relating to any of the facts: that Shibui filed with the Recorder Notices of Lis Pendens Nos. 1 and 2, ex parte, i.e., without filing same with the papers in the case when it was commenced by Shibui, and furnishing a copy to opposing counsel, as required by 5 V.I.C., App. V, Rule 7(b). Whether these notices were filed without probable cause, we shall deal with later in this Opinion, albeit here, too, there exist no material issue of fact, all remaining questions being not of fact, but of law.

Nor is there any dispute about the material facts on which Shibui predicates its Motion for Summary Judgment. The only issue is clearly a legal one, to wit, who, based on the rules of the Condominium—the Act, Declaration, Bylaws and Rules and Regulations—has the obligation to bear the cost of replacing the Hugo-damaged shojis or external panels of the Defendants, Shibui or the defendant unit owners.

■ We hold that based on the aforesaid standard and the fact situation which obtains in all aforesaid three instances; the granting of Summary Judgment, in whole or in part, or denial thereof, is not inappropriate in those instances in which Defendants' Motions for Summary Judgment as to liability only are granted. Whether the separated issue as to damages will result in any such award by the Court must await trial on the merits of that issue.

## 2. *Filing of Notices of Lis Pendens Without Probable Cause*

We come now to the issue of whether, as argued by the Defendants, the two Notices of Lis Pendens were filed, not only ex parte, but also without probable cause. Defendants contend that there was no probable cause for the reason that in violation of 28 V.I.C., Section 130, the Notices were filed claiming that an action affecting title to their units had been commenced when in fact no such action had been commenced.

■ But it cannot be reasonably disputed that the units of the Defendants—originally Units 10, 11 and 17—were and are real estate; that if Shibui prevailed in its suit, it would have a judgment which affected the title to the units in that whoever owned the units at the conclusion of the action would be obligated to satisfy the judgment as the covenants ran with the land, i.e., that an adverse judgment at the conclusion of the action would in fact be an obligation attaching to the units, which the owners at the conclusion of the action, even if they were new owners, would be liable to discharge, but only if they had notice of the filing of the action. No one could reasonably contend that one who became an owner of his unit after the commencement of the action would be bound by a judgment adverse to that unit only if that new owner had notice of the commencement of the action via the vehicle of the recording of the Lis Pendens. That is the purpose of the enactment and existence of 28 V.I.C., Section 130. Surely, no one could reasonably contend that a judgment adverse to the unit(s), affected could result in a diminution of the marketability and indeed the market value of the unit(s) in question.

It might be of some value at this juncture to give a brief historical background of the origin of the doctrine of Lis Pendens. In the case of Chrysler Corp. v. Fidders, 670 F.2d 1316 (1982), we find what appears to be an excellent summary in this regard. In that case, Chrysler sued Defendant corporation for the enforcement of a lien upon New Jersey real estate and filed a Notice of Lis Pendens for the reason that the suit affected title to real estate. The Defendant moved to dismiss, transfer or stay the action and to vacate the Notice of Lis Pendens. The district court denied the Motion in all respects, except one: it granted the Motion to vacate the Notice of Lis Pendens, and ordered the clerk where it was filed to discharge it on constitutional grounds, which subject is not at issue here, but the

court had a lot to say about the origin of the Doctrine of Lis Pendens.

■■ Under the common law doctrine of lis pendens, the mere filing of a lawsuit affecting property imparted constructive notice of the pendency of the suit. One who acquired the property from a party litigant while the suit was pending took the property subject to the outcome of the action, despite having received no actual notice. See, e.g., Haughwout & Pomeroy v. Murphy, 22 N.J. Eq. 531, 544 (N.J. 1871). The doctrine of lis pendens developed as a "doctrine of courts of equity, of ancient origin" id., because of the need to preserve the subject matter of the litigation so that the courts could render an effective final judgment. See Wood v. Price, 79 N.J. Eq. 620, 622, 81 A. 983, 984 (N.J. 1911); Wendy's of South Jersey, Inc. v. Blanchard Management Corp., 170 N.J. Super. 491, 496–97, 406 A.2d 1337–1339–40 (Ch.Div. 1979). The genesis of the doctrine has been described as follows: At early common law the principle that a judgment was binding only upon parties to an action was considered to be axiomatic. When this rule was applied to actions which concerned the title or right to possession of specific property, however, the courts often found themselves in the position of rendering hollow judgments, the subject matter of the litigation having been conveyed to a non-participating party prior to the judgment. It was in response to this somewhat embarrassing situation that the doctrine of lis pendens developed. The hardship wrought by application of the common law doctrine of lis pendens is evident. As Professor Casner noted, "Great hardship often arose due to the inability of the purchaser to discover after reasonable search the existence of a suit affecting the title. Deeds in relation to the land were easily found in the title records provided by the recording acts, but the same was not true with respect to suits and actions". A.J. Casner, American Law of Property, Section 13.12 at 521, (1952) (footnote omitted) . In time, the state legislatures enacted statutes designed to ameliorate the harshness of the common law doctrine. In 1902, New Jersey adopted the predecessor of its current lis pendens statute. Its key feature is the provision that any person claiming an interest in the real estate described in the notice of lis pendens through any defendant in the action as to which the notice of lis pendens is filed "shall be deemed to have acquired the same with knowledge of the pendency of the action, and shall be bound by any judgment entered therein as though he had been made a

party thereto and duly served with process therein". N.J. Stat. Ann. Section 2A: 15-7. Further, until a notice of lis pendens is filed "no action, as to which such notice is required, shall. . . be taken to be constructive notice to a bona fide purchaser or mortgagee of. . . the affected real estate". N.J. Stat. Ann. Section 2A: 15-8.

■■ The statute thus significantly alters the common law doctrine by providing a means for purchasers to obtain actual notice of the pendency of the suit. No longer can the mere filing of the lawsuit itself serve as constructive notice to potential purchasers who would take subject to the outcome of the action. As at common law, however, once the notice of lis pendens is filed, a purchaser of the property takes the property subject to the outcome of the litigation. The filing of a notice of lis pendens "acts as constructive notice to all the world of the pendency of an action involving real property and that a purchaser of that property takes subject to the outcome of the litigation". Wendy's of South Jersey, 170 N.J. Super. at 496, 406 A.2d at 1339.

■■ We hold that the precise reasons why the New Jersey lis pendens statute was first enacted in 1902 hold true why 28 V.I.C., Section 130 was enacted; that the outcome of this action could adversely affect title to the units in question; that since the covenants run with the land such adverse adjudication would be prejudicial to a successor in interest or remote grantee; and that Shibui was well advised and did the right thing after the instant action was commenced to record Notices of Lis Pendens 1 and 2, giving notice to one and all who might acquire an interest in the units of Defendants that a suit was pending, the outcome of which might affect and reduce the value of their units pro tanto.

■■ The right to record the notices of lis pendens is unaffected by the outcome of the suit on the merits.

3. *Do All the Covenants Signed by the Parties to the Action Run With the Land?*

Consolidated gave as one of five reasons why it should not be held responsible to replace the external shojis to its unit the fact that it bought Unit 10 after the unacceptable shojis, to the replacement of which Shibui's action relates, were installed by its predecessors in interest. We disagree. The reason why Consolidated could be bound to replace these panels apply with equal force to Torres.

■■ Its first reason is it bought its Unit 10 from its immediate predecessors in interest, Paul E. Samuels and Dorle Erickson, with the white shoji panels already installed. This argument is meritless. Consolidated bought Unit 10 with both actual and constructive notice of the status of the title. That status was definitively described jointly by Section 917 of the Act; by Paragraph 15 of the Declaration; Article I, Section 2 of the Bylaws; and the Deed of Consolidated itself, all of which provided expressly that their provisions ran with the land. At issue here is the obligation of Consolidated to perform any obligations inherently related to its ownership of Unit 10, in this case to remove and/or install shoji panels of a particular type. There was considerable argument made to the Court at hearing held on June 29, 1992, as to what quality, type or class of covenants could reasonably be construed to be included in this provision. This argument was to the effect that to include every possible covenant, although the plain language of the covenant so read, would be ridiculous. Our answer to that argument is that the parties have the right to choose to make a ridiculous agreement, and to make it, provided it is not illegal or contrary to public policy; that it is not the proper function of the Court to make an agreement for the parties or to modify their agreement so that it makes sense to all and sundry.

■■ Covenants are divisible into two broad classes, viz: (1) real covenants which run with the land, binding not only the heirs and personal representatives of the covenantor, but his assignees as well; and (2) personal covenants which pass no rights to the vendee or other successors in interest in the property but bind the covenantor only. See Am Jur. 2d, Covenants, Conditions, etc. , Section 29. One attribute of a real covenant or a covenant running with the land is that it may be enforced by the covenantee not only against the covenantor but against the transferee of the land to which it relates as well and irrespective of whether such transferee has notice of the covenant. A personal covenant, on the other hand, is not enforcible against a grantee of the land unless he has notice of its existence. This notice may be either actual or constructive. 23 ALR 2d. 522. Here, all the Defendants had both actual and constructive notice, so that it matters not whether the covenant in question here is construed to be real or personal, although it is the Court's opinion that the covenants in question are in fact real covenants which run with the land even without notice.

██ ██ It is a general rule that a purchaser of real property is charged with notice of what appears in the deeds and muniments of his grantor's chain of title, and it is further the rule that such chargeability occurs whether or not the instrument has been recorded. See 55 Am Jur. 1083, Vendor and Purchaser, Section 708. See, as illustrative of this proposition, Guild v. Wallis (1929) 130 OR 148, 279 P 546, where it was held that a covenant in a quitclaim deed in favor of a grantor, whereby the grantee, his heirs and assigns, promise to keep open and in good order certain ditches across the land conveyed, sufficient for proper drainage, although considered to be a personal covenant, is binding upon subsequent grantees in whose chain of title the deed appears. In Restatement of the Law of Property, Section 539, we read:

"The equitable interest resulting solely from the enforceability in equity of a promise respecting the use of land is effective against the successors in title or possession of the promisor except as they are entitled to the protection of the recording acts or of the defense of bona fide purchase for value".

In Comment 1 it is stated that such promissory benefits are "subject to the rule that equitable interests in a given tract of land are cut off by a transfer of the legal title to the land to an innocent purchaser for value", and that against such a purchaser it ceases to be effective, but that as against all others "it is effective without regard to whether the requirements of the law of 'covenants running with the land' are satisfied".

In Comment m it is stated: "A promise respecting the use of land creates such an interest in the land of the promisor respecting which the promise was made as to come within the provisions of the ordinary recording acts. This is true whether the promise is to make payments for benefits received or to be received in the use of the land or to make certain uses of the land. Hence, such promises, in order to avoid the operation of such acts, must be recorded". Reference is made to Section 533, as being consistent with this observation, which states: "The successors in title to land respecting the use of which the owner has made a promise are, as against the claim that they are bound as promisors upon the promise, entitled to the protection of the recording acts".[12]

---

[12] In the absence of written or case law to the contrary, the Restatements of the Law are the rule of law in this jurisdiction. 1 V.I.C., Section 4.

CF. Hammersley v. District Court, Etc., Colo. 610 Pacific Reporter, 2d Series, P. 94.

Consequently, from the uncontrovertible, indeed uncontroverted, facts of the case, it is clear that this contention of Consolidated is without merit; that Consolidated could be bound just as if Consolidated, and not its predecessors in title, had placed the nonconforming shojis on Unit 10.

4. *Who Bears the Duty To Replace the Shojis Damaged or Destroyed by Hugo?*

This lawsuit was commenced by Shibui because Defendants refused to replace the non-conforming shojis they installed in the place of the shojis Hugo irreparably damaged or destroyed with shojis selected by the Board, notwithstanding repeated demands of the Board to do so. They gave as their reasons:

1. The applicable provisions of the Act and Bylaws provide that this is the obligation of Shibui because these shojis being external panels, which all parties admit, are common area and all common area must be maintained, repaired and replaced by common expenses, which must be borne by the common expense fund of the entire institution, administered by the Board.

2. The January 10, 1984, amendment was illegal ab initio because it attempted to convert common area into limited common area, the maintenance, repairs and replacement of which must be borne by the individual unit owner, here the Defendants.

3. The amendment did not cover replacement which is involved here, only maintenance and repairs.

4. The amendment is without legal force and effect because it was not signed by two officers of Shibui.

For its part Shibui contends that it is the obligation of the individual unit owners, here the Defendants, to bear the expense of the replacement of these shojis. Shibui bases its contention on four items: Section 905(e) of the Act; Section 918 of the Act; what it describes as the January 10, 1984, Amendment to Article V, Subsection 10(a) of Shibui's Bylaws; and the Arizona Appellate Court decision in Casita De Castilian, Inc. v. Kamrath, 629 P.2d 562 (Ariz. 1981). We examine these in turn.

Section 905(e) of the Act reads:

"The necessary work of maintenance, repair and replacement of the common areas and facilities and the making of any addi-

tions or improvements thereto shall be carried out only as provided herein and in the bylaws".

Section 918. Contents of Bylaws, provides that

"[t]he bylaws may provide for the following:

(f) Maintenance, repair and replacement of the common areas and facilities and payments therefor".

■■■ There can be no question but that Subsection 905(e) and Section 918 of the Act clothed the Association with the power to charge the individual unit owners with the responsibility of bearing the cost of replacing the external shojis in question. But the crucial question is, did the Association do this? Shibui argues that when the Association at its annual meeting adopted the January 10, 1984, amendment to Article V, Subsection 10(a) of its Bylaws, it did just that. We must reject that argument on several grounds.

First, the amendment adopted by the Association was not to Article V, Subsection 10(a) of its Bylaws, but to Exhibit B to its Declaration or Master Deed. The amendment deleted the last paragraph of Exhibit B entitled "Limited Common Areas and Facilities as per Article 9 (See Footnote 8) of the Declaration", which read:

"Maintenance of all Limited Common Areas and Facilities is a common expense of the Condominium",

and inserted in its place:

"Each unit owner is responsible for maintenance of the Limited Common Areas and Facilities used exclusively by said unit owner including its exterior lighting. All such maintenance shall be at the sole cost and expense of the individual unit owners".

The purpose of the amendment, in addition to making individual unit owners bear the cost of all "limited common areas", as distinguished from "common areas" (See Footnotes 2 and 3 on Page 4 hereof) maintenance costs, was to reconcile this provision of the Declaration with Subsection 10(a), Article V, of the Bylaws, which from the origin of Shibui placed this obligation substantially on the individual unit owners in these words:

"Section 10. Maintenance and Repair. (a) All maintenance of and repairs to any unit, structural or non-structural, ordinary or extraordinary, including maintenance of and repairs to any area and/or facility used exclusively by an individual unit

owner shall be made by the owner of such unit". [Underscoring ours].

From the origin of Shibui to the adoption of the January 10, 1984, amendment, these maintenance costs were borne by Shlbui. From the adoption of the amendment to the present, these costs were borne by the individual unit owners, the only exception being the disagreement which lies at the bottom of this lawsuit.

Secondly, and we hold dispositively on this point, the amendment does not transfer the burden of maintaining, repairing and replacing "common area" or elements, which include the shojis in question here, from the Board to the individual unit owners. The amendment deals only with "limited common area" or elements, not "common area" or elements. Had the 1984 amendment read "Common Areas and Facilities" instead of "Limited Common Areas and Facilities", Shibui's contention would be well taken. Clearly, the problem here is Shibui was vested by Subsection 905(e) and 918(f) of the Act with a power it never exercised.

On Page 10 of its January 28, 1993, Brief, Shibui contends "[n]either does our condominium statute make the board of directors or the association responsible for the expenses of repair and maintenance of common area". We disagree. See 28 V.I.C., Subsection 901(g)(2): "Common expenses mean and include expenses of the administration, maintenance, repair or replacement of the common areas and facilities", and 901(h) "Common profit means the balance of all income, rents, profits and revenues from the common areas and facilities remaining after the deductions of the common expenses".

We note here also that Section 901(g)(3) of the Act again empowered Shibui to make the individual unit owners responsible for common area expenses by providing "Common expenses include expenses agreed upon as common expenses by the Association of Apartment Owners". But this was never done as to these common area external shojis destroyed by Hugo.

Reliance by Shibui on Casita De Castilian is misplaced. None, not one, of the three questions which were issuable in that case applies to the facts of this case. There is no issue here as to whether the Bylaws or the Declaration is controlling; whether all the unit owners must agree on the amendment of a Bylaw (for, as we indicated earlier, the amendment of a Bylaw was never involved in this case; and, finally, in the case before us there was never a require-

ment that the unit owners maintain any common area—roof as in Castilian, shojis destroyed by Hugo in the case sub judice, or otherwise.

■ Since it is clear from the above that it is Shibui's duty under the Act to replace the damaged shojis, we need not address the remaining three reasons given by Defendants for their refusal to bear the cost of replacement of the shojis destroyed by Hugo, except to say we agree with Shibui that these contentions are without merit.

5. *Is Shibui Required by Law To Sue Unit Owners To Correct Violations of the Shibui Declaration and Bylaws Which Occurred Throughout the 20-Year Life of Shibui?*

■ In their Counterclaims, original and amended, Defendants, inter alia, prayed the Court for judgment requiring Shibui to sue unit owners who converted "common areas and facilities" to "limited common areas and facilities" by illegal addition of units to their units and wrongful use of common area space for parking. See Footnote 11. They base their claim on the provisions of Section 926 of the Act. This section reads in pertinent part:

> "Without limiting the rights of any apartment owner, <u>actions may be brought</u> by the manager or Board of Directors, <u>in either case in the discretion of the Board of Directors</u>, on behalf of two or more of the apartment owners, as their respective interest may appear, with respect to any cause of action relating to the common areas and facilities or more than one apartment". [Underscoring ours].

Nowhere in this section, or anywhere else in the Act or in the Bylaws, is the Board required to bring any such action against unit owners. The Act states that actions *may be brought, not shall be brought,* by the manager or by the Board. Then it continues, whether the action is brought by the manager or by the Board, in either case *it is within the discretion of the Board to bring the action.* But the Act also provides *this is without limiting the rights of any apartment owners to sue in their own behalf.* So that either the manager, the Board or any injured apartment owner(s) could have brought the action. Therefore, no apartment owner was damaged by failure of the Board to sue. See also Article II, Section 14 of the Bylaws which exempts members of the Board from liability for any mistake of

judgment, negligence, or otherwise, except for their own individual wilful misconduct or bad faith. There has been no evidence that either the Board as a whole, or any of its individual members, has been charged or chargeable with any such culpable conduct.

Defendants contend that they are entitled to summary judgment on these Counterclaims as a matter of law because Shibui permitted unit owners to illegally create additional dwelling units and parking areas for their benefit, and thus increased the square footage of their ownership interest, in violation of the Declaration, V.I. Law, and the Bylaws of Shibui. They give no specific citations of any of these documents on which they base their claims.

■ At trial on June 29, 1992, Counsel (especially Counsel for Torres speaking for all Defendants), asserted to the Court over and over again that these alleged violations by various unit owners have been taking place from virtually the very beginning of the operation of Shibui in 1972. However, the very first time any legal action was taken by these Defendants to seek relief is when these Counterclaims were filed in the present lawsuit twenty years later. During these many years, owership of offending units has changed several times,[13] so that the claim is so stale that offending owners

---

[13] UNIT 10:

Deed dated March 21, 1977, Caribbean Resorts, Inc., to Maritime A.V.I., Inc., recorded April 12, 1977; Warranty Deed dated July 31, 1979, Maritime A.V.I., Inc. to Robert F. Merrill, recorded September 7, 1979; Warranty Deed dated April 21, 1982, Robert F. Merrill to John H. Birdsall, recorded May 11, 1982; Warranty Deed dated September 3, 1986, John H. Birdsall to Paul E. Samuels, recorded September 19, 1986; Quitclaim Deed dated April 20, 1987, Paul E. Samuels to Dorle Erickson (½ interest), recorded May 19, 1987; Warranty Deed dated April 20, 1990, Paul E. Samuels and Dorle Erickson to Consolidated International, Inc., recorded April 30, 1990. (Taken from Auxiliary 21-A, Page 112 in the Office of the Recorder of Deeds for St. Thomas, as to Unit 10 of Shibui Condominium).

UNIT 17:

Deed dated August 14, 1972, Caribbean Resorts, Inc. to Norman H. Gottlieb and Vivian S. Gottlieb, recorded September 13, 1972; Deed dated September 27, 1974, Norman H. Gottlieb and Vivian S. Gottlieb to Caribbean Resorts, Inc., recorded December 6, 1974; Deed dated November 18, 1977, Caribbean Resorts, Inc. to Herb R. Lambrechts and Hans H. Sandagger, recorded November 29, 1977; Warranty Deed dated June 20, 1979, Herbert R. Lambrechts and Hans H. Sandagger to Ronald D. Anderson, Donna L. Anderson, and SLC of North America, Inc., recorded July 31, 1979; Warranty Deed dated April 1, 1987, Ronald D. Anderson and Donna L. Anderson to SLC of North America, Inc.,

and witnesses have disappeared, surely have not been identified by the pleadings of, or the proof made by, the Defendants. Which specific owners during these many years are the real wrongdoers? The Court cannot perceive of a more classic case in which the defense of laches is appropriate, of where there is a more inexcusable delay in asserting a right to the prejudice of the Plaintiff. Clearly, it is virtually impossible for Plaintiff to defend at this late hour against any such claim. It is the opinion of the Court that these Counterclaims were interposed as mere "make weight" defenses against Plaintiff's demand that Defendants relent from their continuing obstinacy in not removing the non-conforming shoji panels which they installed and replacing them with panels selected by the Board. What is particularly incredible and ironical is these two Defendants' attempts to have the Court apply the defense of laches against the Plaintiff for having waited for six months to file suit even though Plaintiff's delay was to give to Defendants a reasonable time to comply with the Board's (albeit illegal) directive to install the shojis directed by the Board, but here they would have the Court grant damages to them for failure of the Board to sue to correct alleged violations of unit owners which they admit have been occurring for over twenty years. It is a cardinal principle of Equity that "He who seeks equity must do equity". 30 C.J.S., Section 90 et seq. The many cases cited by Defendants in support of their Counterclaims are the product of completely inapposite fact situations, are thus inapplicable to the instant case, and cannot be credited by the Court. Surely, at this late date it would be virtually impossible to develop any reliable, meaningful record as to who the culpable parties are or as to the nature and scope of the damages. Indeed, Defendants have delayed so long in making their claims that Plaintiff was justified in concluding that they acquiesed in whatever infractions transpired and took a position in the matter accordingly. So that it is Defendants who should be and are now equitably estopped.

---

recorded September 17, 1987; Warranty Deed dated September 4, 1987, SLC of North America, Inc. to Kathryn H. Gardner and Graham Gardner, recorded September 17, 1987; Warranty Deed dated March 8, 1989, Kathryn H. Gardner to Carlos R. Torres and Sonia G. Torres, recorded March 28, 1989. Death Certificate for Graham Gardner, dated October 24, 1988, recorded February 13, 1989. (Taken from Auxiliary 21-A, Page 126 in the Office of the Recorder of Deeds for St. Thomas, as to Unit 17 of Shibui Condominium).

▮▮ We hold that by their laches, Defendants are equitably estopped from prevailing in these Counterclaims at this late hour.

## IV. CONCLUSION

In sum, we therefore conclude that Judgment will be entered:

1. Denying Motion filed by Attorney Wilfredo A. Geigel to deny all Motions for partial summary judgment of Defendants and granting Motion of Shibui for summary judgment on its First Amended Complaint;

2. Granting Consolidated's Motion for summary judgment for liability only in re wrongful filing of lien against Unit 10;

3. Granting Motion of Consolidated and Torres for filing Notices of Lis Pendens Nos. 1 and 2 against Units 10 and 17, ex parte, in violation of 5 V.I.C., App. V, Rule 7(b);

4. Denying the Motions of Defendants for partial summary judgment against Shibui for filing Notices of Lis Pendens against Units 10 and 17 without probable cause in violation of 28 V.I.C., Section 130;

5. Denying Cross Motion of Shibui for summary judgment on its First Amended Complaint against both Defendants;

6. Denying Motion of Defendants for partial summary judgment for Shibui's failure to sue unit owners who wrongfully converted common area to their benefit in violation of the Act, the Declaration and/or Shibui's Bylaws; and

7. Denying any award of costs to all parties pursuant to 5 V.I.C., Section 541.

## JUDGMENT

Based on Memorandum Opinion and Order entered in above-titled case on even date herewith, the Court being fully advised and satisfied in the premises, it is
ORDERED, ADJUDGED AND DECREED:

1. That the Motion filed by Attorney Wilfredo A. Geigel to deny all Motions for partial summary judgment filed by Defendants and to grant the Cross Motion of Shibui for summary judgment is Denied;

2. That the Motion of Consolidated for partial summary judgment against Shibui for the filing of a lien against Unit 10, ex parte, and without probable cause is Granted;

3. That the Motions of both Defendants for partial summary judgment against Shibui for filing Notices of Lis Pendens Nos. 1 and 2, ex parte, in violation of 5 V.I.C., App. V, Rule 7(b) is Granted;

4. That the Motion of Defendants for partial summary judgment against Shibui for filing Notices of Lis Pendens Nos. 1 and 2 against Units 10 and 17, without probable cause, in violation of 28 V.I.C., Section 130, is Denied;

5. That the Cross Motion of Shibui for summary judgment against both Defendants on its First Amended Complaint is Denied;

6. That the Motions of Defendants for partial summary judgment against Shibui as to liability only for Shibui's failure to sue unit owners who wrongfully converted common area or elements to their benefit in violation of the Act, the Declaration, and/or Shibui's Bylaws are Denied; and

7. That by virtue of 5 V.I.C. Section 541, costs are Denied all parties to the action.